IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION,<br><br>   Plaintiff,<br><br>v.<br><br>NATIONAL SECURITY AGENCY/<br>CENTRAL SECURITY SERVICE,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff People For the American Way Foundation ("PFAWF") respectfully submits this memorandum of points and authorities in support of its motion for a preliminary injunction.

## PRELIMINARY STATEMENT

This is an action under the Freedom of Information Act ('FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief seeking the disclosure and release of agency records improperly withheld from Plaintiff by Defendant National Security Agency/Central Security Service ("NSA") relating to the NSA's warrantless electronic surveillance program.

As first reported by the *New York Times* on December 16, 2005, Defendant has conducted a warrantless electronic surveillance program of U.S. residents that has been secretly authorized by President Bush more than 30 times since September 11, 2001 and

has been in effect for more than four years.[1] The tremendous public concern and political furor over the program was swift and members of Congress from both sides of the aisle quickly registered their serious concerns and objections to the program itself, and the Administration's actions or inactions in advising and consulting Congress.

For example, on December 16, Senator Arlen Specter (R-Pa.) was quoted as saying that the program is "wrong, clearly and categorically wrong," is "a matter for oversight by the Judiciary Committee" and is "a very, very high priority item."[2] He continued his disapproval the following day, stating that such behavior by the executive branch "can't be condoned."[3] On December 18th, in a letter to House Speaker Dennis Hastert (R-Ill.), Democratic House members called for an independent panel to investigate the NSA's warrantless wiretapping of U.S. citizens. On December 21st, the American Civil Liberties Union delivered a letter to Attorney General Alberto Gonzales questioning the legal authority for the warrantless domestic spying and calling for an independent investigation by a special counsel.[4]

On December 23rd, former Senate Majority Leader Tom Daschle, who helped negotiate the 2001 Authorization for Use of Military Force – the primary authority cited by the Bush Administration in defense of the program – authored an article published in *The Washington Post* where he unequivocally denied that the joint resolution was intended by Congress to confer to the President the authority to conduct domestic wiretaps of Americans without a court order.[5] On December 29th, *The Wall Street*

---

[1] James Risen and Eric Lichtblau, "Bush Lets U.S. Spy on Caller Without Courts," *New York Times* (Dec. 16, 2005).
[2] "Specter Says Senate to Probe Report U.S. Broke Law on Spying," Bloomberg.com (Dec. 16, 2005).
[3] "Bush Says He Signed NSA Wiretap Order," CNN.com (Dec. 17, 2005).
[4] Letter to Attorney General Alberto Gonzales, ACLU, December 21, 2005, available at http://www.aclu.org/safefree/general/23184leg20051221.html.
[5] Tom Daschle, "Power We Didn't Grant," *Washington Post* (Dec. 23, 2005) at A21.

*Journal* published a letter to the editor from Senator Russ Feingold (D-Wis.) explaining that the Foreign Intelligence Surveillance Act expressly prohibits domestic spying without a judicial warrant.[6] On January 8, 2006, the media reported that Senator Specter had asked Attorney General Alberto Gonzales to testify publicly about the warrantless surveillance program.[7] On January 18th, Senator Specter, in his capacity as Chairman of the Senate Judiciary Committee, announced that the full committee would begin hearings on February 6th about the controversial program, titled "Wartime Executive Power and the NSA's Surveillance Authority." Attorney General Alberto Gonzales is now scheduled to testify at those hearings, as well as at later hearings, on behalf of the Bush Administration in defense of the program's legality.[8] On January 20th, Senator Patrick Leahy (D-Vt.) introduced a resolution to set the record straight that Congress did not authorize President Bush's illegal spying program when it passed the 2001 joint resolution governing the use of military force in the war on terror.[9]

Meanwhile, the non-partisan Congressional Research Service has issued four separate reports on the legality of the program.[10] At least two lawsuits have been filed – one filed on January 17, 2006 by the ACLU and others in the United States District Court for the Eastern District of Michigan, Southern Division, challenging the constitutionality

---

[6] Russ Feingold, "The President's and FISA's Wiretapping Limits," *The Wall Street Journal* (Dec. 29, 2005).
[7] Douglass K. Daniel, "Specter Seeks AG's Testimony on Spying," *Associated Press* (Jan. 8, 2006).
[8] Deborah Charles, "Gonzales to Testify on Domestic Spying Program," *Reuters* (Jan. 13, 2006); Keith Perine and Mary Speck, "Senators to Push for Details on NSA Program," *Congressional Quarterly* (Feb. 6, 2006) at 1.
[9] "Leahy On Friday Introduces Resolution Underscoring That Congress Did Not Authorize Illegal Spying on Americans," Leahy Press Release, (Jan. 20, 2006).
[10] See CRS report, "Presidential Authority to Conduct Warrantless Electronic Surveillance to Gather Foreign Intelligence Information," January 5, 2006; CRS report, "Authorization For Use Of Military Force in Response to the 9/11 Attacks (P.L. 107-40): Legislative History," January 4, 2006; CRS report, "Declarations of War and Authorizations for the Use of Military Force: Historical Background and Legal Implications," updated January 14, 2003; and CRS report, "Statutory Procedures Under Which Congress Is To Be Informed of U.S. Intelligence Activities, Including Covert Actions," January 18, 2006.

of the program, and one filed on January 19, 2006, in this Court by the Electronic Privacy Information Center against the Department of Justice for withholding agency records about the program in violation of FOIA.[11]

In an effort to increase the public's knowledge about the program, Plaintiff filed its FOIA request to the NSA on December 29, 2005. However, despite Plaintiff's explicit request for expedited processing, even the 20-business day time limit prescribed for processing a standard FOIA request has passed without any response from the NSA.

The clear purpose of FOIA is to compel federal agencies like the NSA to disclose agency records to the public. In light of this strong public policy favoring disclosure, as well as the overwhelming authority in this Circuit, there can be no question that Plaintiff will ultimately succeed in demonstrating that Defendant has violated the time requirements of FOIA and thus improperly withheld responsive agency records. It is particularly important that prompt compliance with FOIA requirements be ordered in light of the Senate Judiciary Committee hearings beginning today; prompt production of all available, non-exempt documents is especially significant to serve the interests of FOIA and the American public. Plaintiff thus respectfully requests that this Court issue a preliminary injunction compelling Defendant to immediately process and disclose to Plaintiff all responsive documents hopefully in time for meaningful use in connection with Congressional hearings beginning today, but no later than 10 days from the date of the instant motion. 7

## STATEMENT OF FACTS

### A. Plaintiff's FOIA Request and Request for Expedited Processing

---

[11] *Electronic Privacy Information Center v. Department of Justice*, Civil Action No. 06-0096 (HHK)(D.D.C.).

By letter dated December 29, 2005, to five different government agencies – Defendant National Security Agency, the Department of Justice, the Federal Bureau of Investigations, the Central Intelligence Agency, and the Department of Defense – Plaintiff submitted a request under the FOIA for agency records relating to 16 different categories of documents:

1. Any and all documents relating to an individual or organization that has been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Executive Order signed by President Bush in 2002 authorizing the NSA to conduct warrantless wiretaps domestically (hereinafter "the Order"), including, without limitation, documents authorizing the initiation of such electronic surveillance.

2. Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Order since the date of the Order up to the date of this request.

3. Any and all documents that refer, reflect or relate to the total number of individuals who have been the subject of warrantless electronic surveillance by the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.

4. Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes successive wiretaps conducted on the same individual.

5. Any and all documents relating to an attempt by the NSA to conduct warrantless electronic surveillance on an individual within the United States pursuant to the Order that failed to satisfy any set of predetermined conditions for warrantless electronic surveillance as established by any policy, procedure, notice, directive or practice.

6. Any and all documents relating to any audit or review of the NSA's program to conduct domestic warrantless electronic surveillance on individuals within the United States (hereinafter "the NSA program") pursuant to the Order since its execution, whether such audit or review was conducted internally by the NSA or externally, and whether such review or audit was conducted for the benefit of congressional or executive branch use.

7. Any and all documents that refer, reflect or relate to any concern, objection or question raised within the NSA about the NSA program conducted pursuant to the Order.

8. Any and all documents that reflect, refer or relate to communications with members of the United States Senate or House of Representatives about the NSA program to conduct domestic warrantless electronic surveillance, including, without limitation, copies of correspondence from or to members of Congress with any government person or agency about the NSA program.

9. Any and all documents that reflect, refer or relate to the names of any member of the United States Senate or House of Representatives who has been briefed or informed about the program.

10. Any and all documents relating to the dozen or more briefings to Congress about the NSA program referenced by Vice President Dick Cheney in his interview with ABC News "Nightline" on December 18, 2005, including without limitation any documents prepared for use in such briefings and any documents that reflect the attendees and dates of any such briefings. See Hope Yen, *Lawmakers Call for Investigation into Domestic Spying Program*, The Associated Press, Dec. 19, 2005, and attached hereto.

11. Any document that contains or relates to any "checklist" or list created either by the Department of Justice, the Federal Bureau of Investigation or the NSA for use in determining whether probable cause or any justification exists for the initiation of a warrantless electronic surveillance of an individual in the United States by the NSA pursuant to the Order, including, without limitation, copies of initial drafts of such a "checklist," any subsequent revisions to a checklist, and any checklists relating to a specific individual that was considered as a subject of electronic surveillance under the NSA program whether or not such individual was ever in fact subjected to it.

12. Any and all records relating to the NSA's electronic surveillance of Ohio trucker Iyman Fairs, who was reported as having been a subject of the NSA program and who was allegedly involved in a plot to destroy the Brooklyn Bridge, including without limitation any checklist or approval of the NSA's electronic surveillance of him. See James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, and attached hereto.

13. Any and all records relating to a warrantless electronic wiretap conducted under the NSA program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including without limitation any checklist or approval of such electronic surveillance. *Id.*

14. All records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for or for their use during their press briefing on December 19, 2005 about the NSA program and the Order.

15. All records provided to or created for the White House in preparation or for its use during the news conference held by President Bush on December 19, 2005 about the NSA program and the Order.

16. Any and all NSA records relating to People For the American Way Foundation or People For the American Way.

A copy of the original request is attached to Plaintiff's Complaint as Exhibit A.

Plaintiff's letter request stated that in the alternative with respect to requests 2-4, "PFAWF is willing to accept a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Order, with the names of the targeted individuals or organizations redacted." *See* Original FOIA

Request at 2. Plaintiff's letter request also stated that it was "willing to accept redacted copies of the actual records responsive to Nos. 2-4. Because our primary interest is determining the total number of times the NSA has conducted electronic surveillance on individuals within the United States pursuant to the Order without having first obtained a court-approved warrant, and the number of persons subjected to that surveillance, either of these options are acceptable alternative responses to Request Nos. 2-4." *Id.*

In its letter, Plaintiff asked that the processing of its FOIA request be expedited because it is an organization that is primarily engaged in disseminating information to the public - in that it "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes them to an audience" – and because the information is "urgently needed to inform the public concerning some actual or alleged government activity" and "is of widespread and exceptional media interest and the information sought involves possible questions about the government's integrity which affect public confidence." *Id.* (citing *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989))

### B. NSA's Lack of Response to Plaintiff's Request for Expedited Processing and FOIA Request and Plaintiff's Exhaustion of Administrative Remedies

Plaintiff's FOIA request was sent both by regular mail and by facsimile transmission. A fax confirmation receipt reflects that the request was received by the NSA at approximately 5:04 p.m. on December 29, 2005.[12] Accordingly, Defendant's deadline for responding to Plaintiff's expedited processing request was January 8, 2006, and its deadline for responding to a standard request was January 30, 2006. To date, however, Plaintiff has received no response from the NSA at all as to its FOIA request or

---

[12] A copy of that fax receipt is attached to Plaintiff's Complaint as Exhibit B. *See* Complaint at ¶ 11.

*Supervision*, 58 F.3d 738 (D.C. Cir. 1995). As explained in more detail below, these factors weigh in favor of granting Plaintiff's requested relief and an injunction is warranted under the facts of this case.

A. Plaintiff is Likely to Prevail on the Merits

There can be no case more straightforward than this one. There is no question that the Freedom of Information Act mandates specific time limits for responding to requests for the disclosure of agency records. Defendant has completely failed to fulfill any of those requirements. This is not a case of over-withholding or a disagreement as to the applicability of a claimed FOIA exemption or the failure to provide an adequate *Vaughn* index. The matter is simply that the NSA failed to meet the most basic and minimal requirements of FOIA by failing to process Plaintiff's request at all. Notwithstanding Plaintiff's specific request for expedited processing, which requires a 10-calendar day response, Defendant has even failed to meet the 20-business day time limit required for the processing of standard requests. The Defendant's inaction in this matter plainly violates the law, and is particularly troublesome given the significance of the subject matter.

FOIA itself contemplates that blatant violations such as this one deserve the most prompt attention by expressly permitting a wronged requester to proceed to court without filing an administrative appeal. It provides: "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. §552 (a)(6)(C). Because of these indisputable

facts, there is a high likelihood that Plaintiff will succeed on the merits of this case, weighing in favor of the requested injunctive relief.

    B.  <u>Irreparable Harm to Plaintiff and the Public Interest In the Requested Documents Warrants the Requested Relief.</u>

Time is of the essence in this matter. Plaintiff filed its FOIA request because it has a compelling interest in making available to the public information about the warrantless surveillance program, including the frequency and number of wiretaps conducted on U.S. citizens without a court order. Plaintiffs – as well as the U.S. Senate and the public at large – are entitled to review the requested and wrongfully withheld documents in order to have as complete a picture as possible as soon as possible. Prompt compliance is even more important because of Congressional hearings on the NSA program, starting with Senate Judiciary Committee hearings beginning today.[14] The government cannot be allowed to improperly restrict and control the amount of information about its activities from the public, particularly when many contend that those activities directly contravene a fundamental constitutional right. Defendant should be ordered to comply its obligations under FOIA and to stop stalling the American people and its representatives from a full understanding of the program and its implementation.

Equally important is the resulting harm to the public's confidence in the government, which will be seriously impaired unless this court orders Defendant to comply with the law. Lack of transparency by the Administration to Congress and the public, even during wartime, is extremely troubling. It is incontrovertible that there is great public of concern about the unprecedented secrecy surrounding the

---

[14] In other contexts, courts have found that the requisite injury is present, and preliminary injunctive relief is appropriate, in cases where "time is of the essence." *See, e.g., United States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

surveillance activities in secret for over four years. Failure to enforce the provisions of the Freedom of Information Act will reinforce the notion that the government is above the law, and will significantly undermine the integrity of the government. [text] not be allowed to blithely side-step its obligations under FOIA.

The public would be well served by requiring Defendant to comply with its statutory duties in time to be of use in the pending hearings. By granting Plaintiff's requested relief, this court will fulfill FOIA's dominant objective of disclosure, not secrecy.

### C. No Substantial Harm to Others Will Result If the Relief is Granted

In contrast to the harm to Plaintiff and the public which would result if the relief requested were not granted, Defendant will suffer no hardship if this Court were to grant the requested injunction requiring compliance and the disclosure of non-exempt agency records. By granting the requested injunction, this Court will be compelling Defendant to do no more – and no less – than what it otherwise should have done as required under the law. All statutory time limits have now expired and the NSA has yet to perform any of its FOIA obligations to Plaintiff.

### CONCLUSION

FOIA's unmistakable purpose is to mandate broad disclosure of agency records. To deny Plaintiff and the public access to the requested records would be to frustrate this admirable purpose beyond repair. So, too, would permitting Defendant to [cut off]

compelling Defendant to process Plaintiff's request and disclose responsive documents within 10 days of this motion. Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience.

Dated: February 6, 2006

Respectfully submitted,

PEOPLE FOR THE AMERICAN WAY FOUNDATION

By: _____
Counsel
Elliot M. Mincberg
DC Bar No. 941575
People For the American Way Foundation
2000 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)