IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE, | ) ) ) |
| Defendant. | ) ) |

Civil Action No. 06-00206 (ESH)

## DECLARATION OF LOUIS F. GILES

I, Louis F. Giles, hereby declare and state:

1.      I am the Director of Policy for the National Security Agency ("NSA" or the "Agency") and have served in this position since February 2002. I have served with NSA for 31 years, and prior to my current assignment, I held various senior and supervisory positions including Chief of the Information Assurance Directorate's ("IAD") Customer Relations Office and Deputy Chief of the Special Programs Staff of NSA Signals Intelligence Directorate's Cryptanalysis Group. As the Director of Policy, I am a TOP SECRET classification authority, pursuant to Section 1.3 of Executive Order 12958, as amended March 25, 2003, and I am responsible for the processing of all requests made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for NSA records. It is also my responsibility to assert FOIA Exemptions in the course of litigation.

## ORIGIN AND MISSION OF NSA

2.      NSA was established by Presidential Directive in 1952 as a separately

organized agency within the Department of Defense. See Executive Order 12333,

Section 1.12(b). NSA's cryptologic mission has three functions: to collect, process, and

disseminate SIGINT information for national foreign intelligence purposes; to conduct

information security activities; and to conduct operations security training for the U.S.

Government.

     3.    Signals intelligence is one of NSA's primary functions. NSA's SIGINT

mission is to obtain information from foreign electromagnetic signals and to provide,

frequently on a rapid response basis, reports derived from such information or data to

national policy makers and the intelligence community of the United States Government.

A primary SIGINT mission of NSA is to intercept communications in order to obtain

foreign intelligence information necessary to the national defense, national security, or

the conduct of the foreign affairs of the United States. The SIGINT collection mission of

NSA provides national policy makers and the intelligence community with highly

reliable foreign intelligence information.

     4.    The Agency's SIGINT role has been enhanced by superior intelligence

sources and methods, which enable it to keep pace with challenging developments in

virtually every area of technology. In the course of fulfilling these missions, NSA obtains

information and reports it to customers within the U.S. Government. From a SIGINT

mission standpoint, some of the information NSA gleans may not be significant;

however, it is frequently interwoven with information that reveals information

concerning NSA's activities.

     5.    There are two primary reasons for gathering and analyzing intelligence

information. The first, and most important, is to gain the information required to direct

U.S. resources as necessary to counter external threats. The second reason is to obtain the information necessary to direct the foreign policy of the United States. Information produced by SIGINT is relevant to a wide range of important issues, including military order of battle; threat warnings and readiness; arms proliferation; terrorism; and foreign aspects of international narcotics trafficking. This information is often critical to the formulation of U.S. foreign policy and the support of U.S. military operations around the world. Moreover, intelligence produced by NSA is often unobtainable by other means.

6.      NSA has developed a sophisticated worldwide SIGINT collection network which acquires, among other things, foreign and international electronic communications. The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a substantial cost and untold human effort. It relies on sophisticated collection and processing technology.

7.      NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications. Further, SIGINT technology is both expensive and fragile. Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications. Disclosure of even a single communication holds the potential of revealing the intelligence collection techniques that are applied against targets around the world. Once alerted, SIGINT targets can easily frustrate SIGINT collection.

8.      Information obtained from intercepted foreign communications is called communications intelligence ("COMINT"). NSA's COMINT efforts constitute only part of the functions and activities of the Agency. A fundamental tenet of the COMINT

process is that the identity of specific communications (commonly referred to as "targets"), the degree of success in exploiting these targets, the vulnerability of particular foreign communications, and the extent of any cryptologic successes are all matters that must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications. Disclosure of the identity of the targets, the degree of success or weakness in exploiting those targets, the vulnerability of particular foreign communications, and the extent of any cryptologic success would encourage countermeasures by the targets of NSA'S COMINT efforts. If a foreign power is successful in defeating an intercept operation, all of the intelligence from that source is lost unless and until NSA can establish new and equivalent exploitation of the foreign power's signals. If a source becomes unavailable, the military, national policymakers and intelligence community must operate without the information the signals provided. Such losses are extremely harmful to the national security of the United States.

## PLAINTIFF'S FOIA REQUEST AND NSA'S RESPONSE

9.      The People for the American Way submitted via facsimile on 29 December 2005, a request for documents (Exhibit 1) concerning a particular SIGINT program authorized by President Bush, the Terrorist Surveillance Program, or the TSP. My office responded by letter dated 14 February 2006 (Exhibit 2) and advised the Plaintiff of the following: (1) that NSA could not acknowledge the existence or non-existence of records responsive to the items numbered 12, 13, and 16; (2) that NSA had no records responsive to the items numbered 5, 14, and 15; (3) that NSA was releasing 106 pages of documents responsive to item 8 with redactions of Agency employee names

pursuant to FOIA Exemption 3 and redaction of information on other individuals pursuant to FOIA Exemption 6; (4) that NSA was withholding records responsive to items numbered 1-4, 6, 7, and 9-11 because the information is currently and properly classified and protected from disclosure by various statutes and, thus, exempt from disclosure under FOIA Exemptions 1 and 3; and (5) that NSA was also withholding information responsive to Items 6, 7, 9, and 11 because the information is exempt pursuant to FOIA Exemption 5. Finally, NSA advised the Plaintiff of this Agency's appeal procedures.

10.    The purpose of this declaration is to advise the Court of the Agency's processing of Plaintiff's requests. Because of the highly sensitive nature of the TSP, this declaration directly addresses items 5, 8, 14, and 15. The remaining items are addressed in the Declaration of Joseph B., Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate, which is separately provided to the Court.

11.    NSA has no records responsive to items 5, 14, and 15 of the request. Plaintiffs have requested information described in item 5 (documents relating to "an attempt by NSA to conduct warrantless electronic surveillance on an individual within the United States pursuant to [the TSP] that failed to satisfy any set of predetermined conditions . . . as established by any policy, procedure, notice, directive, or practice"); in item 14 (records "provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for or for their use during their press briefing on December 19, 2005"); and in item 15 (records "provided to created for the White House in preparation for of for its use during the news conference held by President Bush on December 19, 2005").

12.    NSA conducted a thorough search of all appropriate databases that would

contain any records responsive to Plaintiff's items 5, 14, and 15. NSA also requested

from the Program Manager, charged with executing the TSP, whether or not responsive

records existed. Based on this search, no responsive records were identified. I have

reviewed and carefully considered Plaintiff and NSA's responses on this matter, and I

have determined that NSA's determination that it could not locate records responsive to

Plaintiff's items 5, 14, and 15 was proper.

13.    Defendant also conducted a thorough search of all appropriate databases

that would contain any records responsive to Plaintiff's item 8. Defendant provided

Plaintiff with 106 pages of documents responsive to that request, with redactions of

Agency employee names pursuant to FOIA Exemption 3 and redactions of other

information on other individuals pursuant to FOIA Exemption 6.[1] FOIA Exemption 3

provides that matters that are "specifically exempted from disclosure by statute" are

exempt from disclosure under the FOIA, if "such statute (A) requires that the matters be

withheld from the public in such a manner as to leave no discretion on the issue, or (B)

establishes particular criteria for withholding or refers to particular types of matters to be

withheld." 5 U.S.C. § 552(b)(3). In this case, Section 6 of the National Security Agency

Act of 1959, see 50 U.S.C. § 402 note, is such a statute. The names and titles of

NSA/CSS personnel fall within the scope of Section 6 of the National Security Agency

Act of 1959, which provides in pertinent part that "nothing in the Act or any other law. .

.shall be construed to require disclosure of the names, titles, salaries, or number of the

persons employed by the agency." Accordingly, the names of NSA employees contained

---

[1]  NSA also maintains certain information concerning communications with members of Congress that is
classified and/or otherwise exempt from disclosure. This information is responsive to plaintiff's items 9
and 10 and, thus, its withholding is discussed in connection with those requests.

in the documents provided to Plaintiff were properly withheld pursuant to FOIA Exemption 3.

14.      Likewise, FOIA Exemption 6 protects information on other individuals because any disclosure would constitute a clearly unwarranted invasion of their personal privacy. In applying this Exemption, NSA redacted names and other personally identifying information (such as addressed, Social Security numbers, telephone numbers and passport numbers) of private individuals who corresponded with their Members of Congress and then had their inquiries forwarded by those Members of Congress to the NSA for response. NSA balanced the privacy interests involved, and determined that the privacy interests sufficiently satisfy the requirements for the application of the FOIA Exemption 6. Thus, the documents identified as responsive to Plaintiff's item 8 have been provided to Plaintiffs with appropriate redactions as required by FOIA.

15.      Finally, I have reviewed the Declaration of Joseph J. B., provided in connection with this litigation. Based on my review of that declaration, as well as my substantive knowledge of FOIA procedures, I am satisfied that NSA has properly invoked Exemptions 1, 3 and 5 as the basis for withholding the information discussed therein. Moreover, in this case, because of the highly sensitive nature of the information involved and the detailed information provided in this declaration and Mr. B.'s declaration, requiring NSA to produce an index of the particular documents withheld would be inappropriate because it would require a description of documents that would reveal information so highly classified that few Agency officials have been provided with access to it; would require a description of potential documents the existence of which

NSA has neither confirmed nor denied; and would itself reveal information specifically protected by FOIA Exemptions 1 and 3.

     16.    I declare under penalty of perjury that the facts set forth above are true and correct.

Executed, this _9th_ day of May, 2006, pursuant to 28 U.S.C. § 1746.

LOUIS F. GILES
Director of Policy
National Security Agency

8

# EXHIBIT 1

# PEOPLE FOR THE AMERICAN WAY FOUNDATION

**VIA FACSIMILE TRANSMISSION AND VIA FIRST-CLASS MAIL DELIVERY**

December 29, 2005

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax to: 443-479-3612

U.S. Department of Defense
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155
Fax to: 703-696-4506

FOIA/PA Mail Referral Unit
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0001
Fax to: 202-616-6695

Chief, FOIA/PA Section
Federal Bureau of Investigations
J.Edgar Hoover Building
935 Pennsylvania Ave.
Washington, DC 20530-0015
Fax to: 202-324-3752

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505
Fax to: 703-613-3007

RE: **FREEDOM OF INFORMATION ACT REQUEST & REQUEST FOR EXPEDITED PROCESSING**

Dear Freedom of Information Officers:

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") submitted on behalf of People For the American Way Foundation ("PFAWF").

A.   Records Sought

We seek disclosure of the following agency records:

1.   Any and all documents relating to an individual or organization that has been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Executive Order signed by President Bush in 2002 authorizing the NSA to conduct warrantless wiretaps domestically (hereinafter "the Order"), including, without limitation, documents authorizing the initiation of such electronic surveillance.

2.   Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Order since the date of the Order up to the date of this request.

3.   Any and all documents that refer, reflect or relate to the total number of individuals who have been the subject of warrantless electronic surveillance by

the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.

4. Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes successive wiretaps conducted on the same individual.

5. Any and all documents relating to an attempt by the NSA to conduct warrantless electronic surveillance on an individual within the United States pursuant to the Order that failed to satisfy any set of predetermined conditions for warrantless electronic surveillance as established by any policy, procedure, notice, directive or practice.

6. Any and all documents relating to any audit or review of the NSA's program to conduct domestic warrantless electronic surveillance on individuals within the United States (hereinafter "the NSA program") pursuant to the Order since its execution, whether such audit or review was conducted internally by the NSA or externally, and whether such review or audit was conducted for the benefit of congressional or executive branch use.

7. Any and all documents that refer, reflect or relate to any concern, objection or question raised within the NSA about the NSA program conducted pursuant to the Order.

8. Any and all documents that reflect, refer or relate to communications with members of the United States Senate or House of Representatives about the NSA program to conduct domestic warrantless electronic surveillance, including, without limitation, copies of correspondence from or to members of Congress with any government person or agency about the NSA program.

9. Any and all documents that reflect, refer or relate to the names of any member of the United States Senate or House of Representatives who has been briefed or informed about the program.

10. Any and all documents relating to the dozen or more briefings to Congress about the NSA program referenced by Vice President Dick Cheney in his interview with ABC News "Nightline" on December 18, 2005, including without limitation any documents prepared for use in such briefings and any documents that reflect the attendees and dates of any such briefings. See Hope Yen, *Lawmakers Call for Investigation into Domestic Spying Program,* The Associated Press, Dec. 19, 2005, and attached hereto.

11. Any document that contains or relates to any "checklist" or list created either by the Department of Justice, the Federal Bureau of Investigation or the NSA for use in determining whether probable cause or any justification exists for the initiation of a warrantless electronic surveillance of an individual in the United States by the NSA pursuant to the Order, including, without limitation, copies of initial drafts of such a "checklist," any subsequent revisions to a checklist, and any checklists relating to a specific individual that was considered as a subject of electronic surveillance under the NSA program whether or not such individual was ever in fact subjected to it.

12. Any and all records relating to the NSA's electronic surveillance of Ohio trucker Iyman Fairs, who was reported as having been a subject of the NSA program and who was allegedly involved in a plot to destroy the Brooklyn Bridge, including without limitation any checklist or approval of the NSA's electronic surveillance of him. *See* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts,* New York Times, Dec. 16, 2005, and attached hereto.

13. Any and all records relating to a warrantless electronic wiretap conducted under the NSA program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including without limitation any checklist or approval of such electronic surveillance. *Id.*

14. All records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for or for their use during their press briefing on December 19, 2005 about the NSA program and the Order.

15. All records provided to or created for the White House in preparation or for its use during the news conference held by President Bush on December 19, 2005 about the NSA program and the Order.

16. Any and all NSA records relating to People For the American Way Foundation or People For the American Way.

As to Request Nos. 2 – 4, PFAWF is willing to accept a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Order, with the names of the targeted individuals or organizations redacted. Alternatively, PFAWF is also willing to accept redacted copies of the actual records responsive to Nos. 2-4. Because our primary interest is determining the total number of times the NSA has conducted electronic surveillance on individuals within the United States pursuant to the Order without having first obtained a court-approved warrant, and the number of persons subjected to that surveillance, either of these options are acceptable alternative responses to Request Nos. 2-4. This basic information on how many people have been wiretapped pursuant to the Order, and how many times such surveillance has occurred, should clearly be disclosed to the American people.

B.   Request for Expedited Processing

PFAWF requests that you provide this information as soon as possible as it meets the criteria for expedited processing under the FOIA.

First, the requesting organization is primarily engaged in disseminating information to the public, that is, it is an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes them to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). PFAWF publishes news releases, media briefings, reports, and other materials that are disseminated to the public for its use in participating in the public discourse on important civil and constitutional rights. PFAWF's materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its research department. Requester also disseminates information through its Web site (www.pfaw.org). The Web site addresses civil liberties issues in depth, provides features on civil liberties issues in the news, and contains hundreds of documents that relate to the issues on which PFAWF is focused.

Second, records as to the NSA's electronic surveillance of individuals within the United States without a court approved warrant in violation of the Fourth Amendment is information that is "urgently needed to inform the public concerning some actual or alleged government activity." PFAWF is making this request specifically to further the public's understanding of the government's secret activities in its war on terrorism, a matter that is particularly pertinent in light of the Supreme Court's decisions in 2004 which made clear that there limits to the President's powers even during times akin to war, particularly when they infringe on the fundamental rights of American citizens.

Third, the NSA program of conducting secret electronic surveillance of Americans within the United States "is of widespread and exceptional media interest and the information sought involves possible questions about the government's integrity which affect public confidence." The exceptional interest in this matter is incontrovertible as prominent members of both parties have called for a congressional investigation into the NSA program since the New York Times first shed light of its existence last week. As public officials and the American people have made clear, the protection of civil liberties for citizens and non-citizens alike is one of this country's most fundamental promises. A small selection of news articles that reflect the strong public interest in the materials PFAWF seeks in our request is attached hereto.

Finally, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions as to its credibility and integrity. For over three years, the administration has authorized the NSA to conduct secret wiretaps of Americans despite its repeated assertions that it has been conducting its war on terrorism within the confines of the law. This newly discovered program is in direct contradiction to President Bush's own words in response to concerns about the erosion of civil liberties caused by the PATRIOT Act when he said: "[A]ny time you hear the United States government talking about wiretap, it requires - a wiretap requires a court order. Nothing has changed, by the way. When we're talking about chasing down terrorists, we're talking about getting a court order before we do so." *See* Remarks by the President in a Conversation on the USA Patriot Act on April 20, 2004 attached hereto. This newly discovered secret activity by the NSA raised serious questions that should be promptly answered about how many times the government has conducted warrantless wiretaps on individuals within the United States and who was aware of the program. The concern that the government has consistently sought to prevent the public and the media from monitoring its post 9/11 activities in any meaningful way seriously undermines public confidence in the government.

In sum, this request is about federal government activity, it concerns a matter of current exigency to the American public, and the consequences of delaying a response would compromise a significant recognized interest. *See Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001). This request for expedited processing should thus be granted and PFAWF looks forward to your reply within 20 business days, as the statute requires under Section 552(a)(6)(A)(I).

I certify that my statements concerning the need for expedited review are true and correct to the best of my knowledge and belief.

C.    Request for Fee Waiver

We request a waiver of the fees involved in the processing of this request for two reasons. First, PFAWF should be entitled to the exemption afforded news media and educational institutions because its mission is consistent with both types of organizations. As described above, PFAWF is primarily engaged in disseminating information to the public. It should, therefore, be afforded the same exemption granted educational and news organizations.

Second, PFAWF should be entitled to the waiver of any fees because the release of these records is indisputably in the public interest. As described above, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions that deserve an answer. The authorization and conduct of secret warrantless wiretaps of Americans directly violates one of the basic tenets of this country's constitutional guarantees and the public is entitled to know how many times and what manner the government has been engaging in such activity. These records cannot be obtained from other sources. PFAWF has expertise in

reviewing these types of records because we have, for many years, been involved in disseminating information about the government's conduct of the war on terrorism to the public - we have 750,000 members and regularly transmit information of public interest to our members and news media. Given the public's interest in the documents requested and PFAWF's expertise in reviewing and analyzing such documents, and PFAWF's ability to transmit information about these types of documents to a wide audience, PFAWF seeks a waiver of any fees associated with this request.

Thank you for your prompt attention to this matter. Please respond to Elliot Mincberg, General Counsel, People For the American Way Foundation, 2000 M Street, NW, Suite 400, Washington, DC 20036, (202) 467-4999.

Sincerely,

Elliot Mincberg, General Counsel
People For the American Way Foundation

Enclosures

# EXHIBIT 2



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE. MARYLAND 20755-6000

FOIA Case: 47925
14 February 2006

Mr. Elliot Mincberg
People for the American Way Foundation
2000 M Street, NW
Suite 400
Washington, DC 20036

Dear Mr. Mincberg:

This responds to your Freedom of Information Act (FOIA) request submitted via facsimile on 29 December 2005, which was received by this office on 30 December 2005, for documents concerning the National Security Agency's collection program approved by President Bush (hereinafter referred to as "the program"). Specifically you requested the following items as they relate to the above (items below are paraphrased for ease of reference only; request letter language was used for processing the request).

1.  All documents relating to individuals or organizations who were the subject of the program.

2.  Documents reflecting the total number of individuals subject to surveillance under the program from the program's inception to the present.

3.  Documents reflecting the total number of individuals subject to surveillance under the program from mid-2004 to the present.

4.  Documents that reflect the total number of instances of surveillance under the program.

5.  Documents relating to any attempts by NSA to conduct surveillance under the program on an individual in the U.S. that failed to satisfy any set of predetermined conditions for surveillance under the program.

6.  Documents relating to any audit or review of the program, whether conducted internally or externally.

7.  Documents that reflect any concern, objection or question raised within NSA about the program.

FOIA Case: 47925

8. Communications with members of Congress about the program.

9. Documents naming the members of Congress who have been briefed on the program.

10. Documents relating to Vice President Dick Cheney's briefings to Congress about the program.

11. Any "checklist" or list created by the Department of Justice, Federal Bureau of Investigation or NSA for use in determining cause or justification for surveillance of individuals in the U.S. under the program.

12. NSA's surveillance of Ohio trucker Lyman Fairs.

13. Records collected under the program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including any checklist or approval of such collection.

14. Records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for a 19 December 2005 press briefing about the program.

15. Records provided to or created for the White House in preparation for a new conference held by President Bush on 19 December 2005 about the program.

16. Records relating to People for the American Way Foundation or People for the American Way (which we interpret to mean as it relates to surveillance under the program).

   Your request has been assigned Case Number 47925. For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. There are no assessable fees for this request; therefore, we did not address your request for a fee waiver.

   As you know, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

FOIA Case: 47925

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens. However, because of the highly classified nature of the program, we can neither confirm nor deny the existence of records responsive to the items numbered 12, 13, and 16 in your request. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended. Thus, the items numbered 12, 13, and 16 in your request are denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, the items numbered 12, 13, and 16 in your request are also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Regarding the items numbered 5, 14, and 15 in your request, we have determined that we do not have records responsive to those portions of your request.

Documents responsive to the item numbered 8 in your request are enclosed. The names of NSA/CSS employees have been deleted from these enclosures. This information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statute applicable in this case is Section 6, Public Law 86-36 (50 U.S. Code 402 note).

In addition, information regarding other individuals has been deleted from the enclosures in accordance with 5 U.S.C. 552 (b)(6). This exemption protects from disclosure information which would constitute a clearly unwarranted invasion of personal privacy. In balancing the public interest for the information you request against the privacy interests involved, we have determined that the privacy interests sufficiently satisfy the requirements for the application of the (b)(6) exemption.

Information responsive to the items numbered 1-4, 6-7, 9-11 of your request has been withheld in its entirety. The information has been found to be currently and properly classified in accordance with Executive Order 12958, as amended. The information meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended. The

FOIA Case: 47925

information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities. Accordingly, this information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Finally, in addition to being exempt under exemptions 1 and 3, the information responsive to the items numbered 6, 7, 9, and 11 is also exempt from disclosure pursuant to the fifth exemption of the FOIA. This exemption applies to inter-agency or intra-agency memoranda or letters which would not be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product.

Since the items numbered 12, 13, and 16 of your request are denied; we did not locate records responsive to the items numbered 5, 14, and 15; and because information responsive to the items numbered 1-4, 6-8, and 9-11 is being withheld either in part or in its entirety, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD 20755-6248. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

FOIA Case: 47925

Finally, we have enclosed copies of two DIRGRAMs relating to the program that have been released to other requesters.

Sincerely,

LOUIS F. GILES
Director of Policy

Encls:
a/s