IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-00206 (ESH) |
| v. | ) | |
| | ) | |
| NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE, | ) ) | |
| | ) | |
| Defendant. | ) ) | |
| | ) | |

## DECLARATION OF JOSEPH B.[1]

I, Joseph B., declare as follows:

1.      I am the Deputy Chief of Staff for Operations and Support for the Signals

Intelligence Directorate of the National Security Agency (NSA), an intelligence agency

within the Department of Defense.  I oversee signals intelligence (SIGINT) operations of

NSA, which includes the SIGINT units of the U.S. armed services.  Under Executive

Order No. 12333, 46 Fed. Reg. 59941 (1981), as amended on January 23, 2003, 68 Fed.

Reg. 4075 (2003), and August 27, 2004, 69 Fed. Reg. 53593 (2004), the NSA SIGINT

Directorate is responsible for the collection, processing, and dissemination of SIGINT

information for the foreign intelligence purposes of the United States.  I am responsible

for protecting NSA SIGINT activities, sources and methods against unauthorized

disclosures.  I have been designated an original TOP SECRET classification authority

under Executive Order No. 12958, 60 Fed. Reg. 19825 (1995), as amended on March 25,

2003, 68 Fed. Reg. 15315 (2003), and Department of Defense Directive No. 5200.1-R,

---

[1] This Agency official's name is not a matter of public record and pursuant to P.L. 86-36 has been withheld.

Information Security Program Regulation, 32 C.F.R. 159a.12 (2000).

2.    My statements herein are based on my personal knowledge of SIGINT collection and NSA operations and the information available to me in my capacity as the Deputy Chief of Staff for Operations and Support for the Signals Intelligence Directorate. Moreover, as NSA's Original Classification Authority for the Terrorist Surveillance Program (TSP), I am one of the few Agency officials who has been cleared to have access to the details of the TSP and the documents related thereto.  I am responsible for ensuring that these details are properly classified when necessary to protect intelligence sources and methods.  Accordingly, I have knowledge of the sources and documents searched by the Agency in response to the Plaintiff's request.

### THE TERRORIST SURVEILLANCE PROGRAM (TSP)

3.    Following the devastating attacks of September 11, 2001, the President of the United States authorized the NSA to intercept international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations (hereinafter, the "Terrorist Surveillance Program" or "TSP").  The TSP is a targeted and focused program intended to help "connect the dots" between known and potential terrorists and their affiliates.  In order to intercept a communication under the TSP, one party to the communication must be located outside the United States and there must be a reasonable basis to conclude that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Qaeda. Thus, the TSP program is an "early warning" system with one purpose:  to detect and prevent another catastrophic attack on the United States.

4.      The TSP is a SIGINT program that is critical to the national security of the United States. The President publicly acknowledged the existence of the program on December 17, 2005. As the President has made clear, however, details about the TSP remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, as amended. Unauthorized disclosure of information regarding the TSP can be expected to cause exceptionally grave damage to the national security of the United States. Thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified TOP SECRET, and is subject to the special access and handling requirements reserved for "Sensitive Compartment Information," (SCI), because it involves or derives from particularly sensitive intelligence sources and methods.

5.      NSA's SIGINT operations, including the TSP, are both sensitive and fragile. As more fully described in the Declaration of Louis Giles, which I have reviewed, the critical intelligence information that is derived from NSA's SIGINT operations depends upon the collection of electronic communications, which can be easily compromised if targets are made aware of NSA capabilities and priorities. If an individual learns or suspects that his signals are or may be targeted by the NSA for collection, he can take steps to evade detection, to manipulate the information that NSA receives, or to implement other countermeasures aimed at undermining the NSA's operations. The resulting loss of accurate intelligence from such a source deprives U.S. policy makers of information critical to U.S. interests, and in the case of the TSP, could result in the catastrophic failure of the early warning system that the President has established to detect and prevent the next terrorist attack.

6.      Congress has specifically recognized the inherent sensitivity of the SIGINT activities of the NSA; thus, Congress has passed three statutes that protect the fragile nature of NSA's SIGINT efforts, including, but not limited to, the existence and depth of SIGINT-related analytical successes, weaknesses, and exploitation techniques. These statutes recognize the vulnerability of signals intelligence to countermeasures of a foreign power or terrorist party and the significance of the loss of valuable foreign intelligence information to national policymakers and the intelligence community. These statutes are: Section 6 of the National Security Agency Act of 1959 (codified at 50 U.S.C. § 402 note), Section 102A(i)(l) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), and 18 U.S.C. § 798. Under these statutes, NSA is specifically authorized to protect certain information concerning its activities, and its intelligence sources and methods, from public disclosure.

## PLAINTIFF'S FOIA REQUEST

7.      Plaintiff's FOIA request, dated December 29, 2005, seeks NSA records relating to 16 items. Exhibit 1. NSA responded to plaintiff's request by letter dated February 14, 2006. Exhibit 2. I have reviewed plaintiff's FOIA request as well as NSA's response. Based on my knowledge of the TSP, my understanding of the exemptions provided for by FOIA, and my consultation with Louis Giles (NSA's Director of Policy and the official responsible for the processing of all requests made pursuant to FOIA), I believe, as explained in the detail below, that NSA's response to Plaintiff's FOIA request was proper.

## A. Documents pertaining to the execution of the TSP (Items 1-4, 6-7, 9-10, and 11)

8.    In response to plaintiff's FOIA request, NSA undertook a search for those categories of documents which were most likely to contain the information responsive to plaintiff's specific requests.  The documents NSA located in response to Plaintiff's items 1-4, 6-7, 9-10, and 11 basically fall into three categories of documents: (1) informational briefings; (2) checklists; and (3) audits/internal reviews.  The information requested in plaintiff's items 1-4, 6-7, 9-10, and 11 is protected from release by various statutes and is also currently and properly classified.

9.    The first category of documents maintained by NSA consists of informational briefing records which are responsive to Plaintiff's items 1-4 and 9-10.  I have reviewed documents in this category responsive to Plaintiff's requests, consisting of briefing slides maintained by NSA of the closed briefings given to certain members of Congress concerning the TSP.  These slides detail information related to the number of individuals subject to surveillance, contain the identity of some individuals, and contain information related to the number of communications intercepted under the TSP.  They also describe in detail the operational process used by NSA to carry out the TSP.  Other records which contain similar and redundant information also exist.

10.    The information contained in this first category of documents maintained by NSA meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 of Executive Order 12958, as amended, which authorizes the classification of information concerning "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to national

security, which includes defense against transnational terrorism." Information responsive to these requests is classified TOP SECRET-SCI, which means that its unauthorized disclosure "reasonably could be expected to cause exceptionally grave damage to the national security," and that the information is subject to special access and handling restrictions.

11.     Specifically, disclosure of the information requested in item 1 -- which asks NSA for records relating to any individual or organization that has been a subject of surveillance under the TSP -- would obviously and immediately affect the ability of NSA to fulfill the primary purpose of the TSP:  to detect and prevent the next terrorist attack against the United States.  To identify targets of the TSP is to offer official confirmation that such persons have been identified as, or linked to, a potential threat.  Such official confirmation is invaluable information to the enemy; its disclosure will alert the enemy that their operations may have been compromised and allow them to adopt strategies to circumvent surveillance and to otherwise evade detection, doing immeasurable damage to the national security of the United States.

12.     Similarly, items 2-4, which seek, in various degrees, statistics relating to the operation of the TSP, would reveal information about NSA's success or lack of success in implementing the TSP.  The disclosure of NSA's ability or lack of ability to access or monitor an individual's communications for interception reveals to that individual information about the U.S. intelligence community's capabilities, priorities, and activities.  The disclosure of this information could reasonably be expected to cause exceptionally grave damage to the national security because it gives the nation's adversaries information about the nature and frequency of the Government's use of

specific techniques that could assist them in undermining the NSA and the intelligence community's national security mission.

13.    Specifically, because NSA's ability to produce foreign intelligence information depends on its access to foreign and international electronic communications, public disclosure of either the capability to collect specific communications, the substance of the information derived from such collection, or the frequency with which such information is collected can easily alert targets to the vulnerability of their communications. Targeteted individuals know how they communicated, and as such, would know, upon NSA's confirmation or denial which of their communications were vulnerable to NSA's electronic surveillance. Once alerted, SIGINT targets can frustrate SIGINT collection by using different communications techniques; or by utilizing a different communications link. This may deny access to the target's communications and therefore deny access to information crucial to the defense of the United States both here and abroad.

14.    Thus, disclosing the number of individuals or organizations subject to surveillance, whether since the inception of the program (plaintiff's item 2), or in a particularly identified time frame (item 3), or the total number of communications intercepted under the TSP (item 4), would provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection. This information could be exploited by our adversaries in order to conduct their international terrorist activities more securely, to the detriment of the national security of the United States. Information

responsive to plaintiff's items 1-4, accordingly, is properly withheld under Exemption 1 of FOIA.

15.    As described above, Congress has specifically prohibited the disclosure of information related to the NSA's activities and functions, and, more broadly, the sources and methods used by the intelligence community. For the reasons set forth above, I have determined that NSA's SIGINT activities and functions, and its intelligence sources and methods would be revealed if information responsive to plaintiff's items 1-4 were disclosed. This information is exempted from disclosure by statute and thus information responsive to plaintiff's items 1-4 is also properly withheld under Exemption 3 of FOIA.

16.    The second category of documents maintained by NSA consists of checklists which are responsive to Plaintiff's item 11, which seeks any "checklist . . . created . . . for use in determining whether probable cause of any justification exists for the initiation of" surveillance under the TSP, including "copies of initial drafts of such a 'checklist,' any subsequent revisions to such checklist." I have reviewed documents in this category responsive to Plaintiff's request. This category contains checklists which, for example, set forth the criteria used to determine which individuals will be subject to surveillance and operational details regarding how NSA carries out its mission. Other records which contain similar and redundant information also exist.

17.    The information contained in this second category of documents is also currently and properly classified under Executive Order 12958, as amended. To disclose the criteria used to identify which individuals might be subject to monitoring by the United States essentially provides the enemy with a checklist of their own, which they

8

can implement to attempt to evade monitoring, thus potentially depriving the NSA of the opportunity to collect information essential to the detection and prevention of the next terrorist attack. Such information is properly withheld under Exemption 1 of FOIA. Such information, moreover, is critical information relating to the activities and functions of the NSA, and to its methods of collecting intelligence, and is, thus, subject to statutory protection as set forth above, and properly withheld under Exemption 3 of FOIA.

18.    The third category of documents maintained by NSA consists of audits/internal reviews which are responsive to Plaintiff's items 6 and 7, which seek documents relating to any audit or review of the NSA's program (item 6) or "any and all documents that refer, reflect or relate to any concern, objection or concern raised within the NSA" about the TSP (item 7). I have reviewed documents in this category responsive to Plaintiff's requests. This category contains documents regarding the operation of the program, and providing recommendations and suggestions for the effective operation of the program. Other records which contain similar and redundant information also exist.

19.    Disclosure of information responsive to these requests would reveal details about the operation of the TSP, and its strengths and vulnerabilities, which could have the effect of compromising the effectiveness of the program and undermining its goal of detecting and preventing the next terrorist attack on the United States. Thus, such information is properly and currently classified pursuant to the criteria set forth in Executive Order 12958, as amended, and is exempt from disclosure pursuant to the statutory prohibitions discussed above. Such information, accordingly, is exempt from disclosure under FOIA exemptions 1 and 3.

20.    I have reviewed information in each of these categories of documents in my capacity as an Original Classification Authority. The information responsive to plaintiff's requests contained in these documents is itself material that is currently and properly classified for the reasons set forth above. Moreover, such information is so intertwined with additional information regarding the details of operation of the program that it cannot be segregated and released without compromising the national security of the United States. Even the release of general information about the TSP poses the substantial risk that our adversaries will be able to piece together sensitive information about how the program operates. For example, disclosing the dates on which documents were created, the subjects of TSP-related documents, or the volume of documents maintained by NSA reveals information about the capabilities, scope and effectiveness of the program, which would be utilized by the enemy and allow them to plan their terrorist activities more securely. Accordingly, no segregable portion of the responsive documents may be disclosed.

21.    In addition to being currently and properly classified and protected from release by various statutes as described above, information responsive to items numbered 6, 7 (internal review and audits), and 11 (checklists) is also protected from disclosure because it is privileged and thus exempt from disclosure under FOIA Exemption 5. The privileges that apply here are the deliberative process privilege, the attorney-client privilege, and the attorney-work product doctrine.

22.    In this case, any information responsive to items 6, 7, and 11 -- which seek drafts or other information about internal deliberations, discussions, and communications -- would be part of a predecisional deliberative process, and/or attorney-client privileged

information, and/or attorney work product. Discussions about the performance, effectiveness, and methods for improving, or otherwise modifying the TSP are an integral part of the deliberative process. Similarly, consultation with Agency attorneys regarding the parameters of NSA's authority or other matters pertaining to the TSP fall within the attorney-client privilege and attorney-work product doctrine. The release of this information could chill the decision-making process of Agency personnel.

23.    The logic behind the deliberative process privilege is that by maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy, the deliberative process privilege encourages frank and open discussions of ideas, and hence, improves the decision making process. This entire process would be harmed if participants could no longer expect confidentiality when engaging in internal debates.

24.    The categories of documents described herein contain information responsive to plaintiff's requests. As described above, however, the information sought by plaintiffs is itself both classified and statutorily exempt from disclosure. Thus, as a result, although other documents that contain similar or redundant information may exist, the information sought by plaintiff will be exempt from disclosure regardless of the particular document in which it appears. Moreover, the TSP is a highly classified program to which only a limited number of NSA personnel have access. In light of these facts, it would be tremendously burdensome for NSA to identify every individual document that contains the information plaintiff requests; essential personnel cleared for access to the program would have to be diverted from intelligence tasks critical to the national security of the nation in order to undertake the task, and yet the task would

provide virtually no return. Any document containing the information requested by Plaintiff that might be identified by such an intensive search would be exempt from disclosure under FOIA Exemptions b(1), b(3), and b(5).

## B. Request for Surveillance Records (Items 12, 13, and 16)

25.     Item 12 of plaintiff's request seeks "Any and all records relating to NSA's electronic surveillance of Ohio trucker Iyman Faris, who was reported as having been a subject of the NSA program and who was allegedly involved in a plot to destroy the Brooklyn Bridge, including without limitation any checklist or approval of NSA's electronic surveillance of him. . . ." Exhibit 1. Item 13 seeks "Any and all records related to a warrantless electronic wiretap conducted under the NSA program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including without limitation any checklist or approval of such electronic surveillance." Item 16 seeks, as relate to the TSP, "Any and all NSA records relating to People for the American Way Foundation or People for the American Way." Each of these requests seeks information relating to whether particular individuals or organizations might be targets of surveillance under the TSP.

26.     Because of the highly classified nature of the TSP, NSA can neither confirm nor deny the existence of records responsive to plaintiff's items numbered 12 (surveillance of Ohio trucker), 13 (records related to a particular alleged al Qaeda plot), and 16 (records relating to plaintiff, collected via the TSP).

27.     NSA cannot confirm publicly in any particular case whether or not any communications were collected pursuant to the TSP or, conversely, that no such collection occurred. Confirmation by NSA that a person's activities are not of foreign

intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. Our adversaries would have a road map, instructing them which communications modes and personnel remain safe or are successfully defeating NSA's capabilities. For example, if NSA were to admit publicly in response to an information request that no information about Persons X, Y or Z exists, but in response to a separate information request about Person T state only that no response could be made, this would give rise to the inference that Person T is a target of the TSP. Over time, the accumulation of these inferences would disclose the targets and capabilities (sources and methods) of the TSP and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications.

28.    NSA cannot respond to each case in isolation, but must acknowledge that our adversaries will examine all released information together. This compilation of information, if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security. Therefore, the fact of the existence or nonexistence of the information requested in items 12, 13, and 16 is a currently and properly classified matter in accordance with Executive Order 12958, as amended and thus the request is properly denied pursuant to FOIA Exemption 1.

29.    The fact of the existence or nonexistence of these items is also protected from disclosure by federal statute. Acknowledging the existence or nonexistence of the information requested in items 12, 13, and 16 would reveal NSA's organization, functions and activities by revealing the success or failure of NSA's activities. It would

13

also reveal the intelligence sources and methods that NSA uses to obtain this information. Revelation of this information is prohibited pursuant to Section 6 of the National Security Agency Act of 1959, 50 U.S.C. 402 note, and Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004. Finally, this information would reveal the limitations of NSA SIGINT capabilities. This revelation of communications intelligence capabilities and limitations is prohibited by 18 U.S.C. § 798. Thus, these disclosures are prohibited by statute, and are properly exempt from disclosure under FOIA Exemption 3.

30.    I declare under of penalty of perjury that the foregoing is true and correct.

Signed this __9th__ day of May, 2006

JOSEPH B.
Deputy Chief of Staff
 for Operations and Support
Signals Intelligence Directorate
National Security Agency

# EXHIBIT 1

PEOPLE
FOR THE
AMERICAN
WAY
FOUNDATION

**VIA FACSIMILE TRANSMISSION AND VIA FIRST-CLASS MAIL DELIVERY**

December 29, 2005

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax to: 443-479-3612

U.S. Department of Defense
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155
Fax to: 703-696-4506

FOIA/PA Mail Referral Unit
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0001
Fax to: 202-616-6695

Chief, FOIA/PA Section
Federal Bureau of Investigations
J.Edgar Hoover Building
935 Pennsylvania Ave.
Washington, DC 20530-0015
Fax to: 202-324-3752

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505
Fax to: 703-613-3007

RE:   FREEDOM OF INFORMATION ACT REQUEST &
      REQUEST FOR EXPEDITED PROCESSING

Dear Freedom of Information Officers:

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") submitted on behalf of People For the American Way Foundation ("PFAWF").

A.   Records Sought

We seek disclosure of the following agency records:

1.   Any and all documents relating to an individual or organization that has been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Executive Order signed by President Bush in 2002 authorizing the NSA to conduct warrantless wiretaps domestically (hereinafter "the Order"), including, without limitation, documents authorizing the initiation of such electronic surveillance.

2.   Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Order since the date of the Order up to the date of this request.

3.   Any and all documents that refer, reflect or relate to the total number of individuals who have been the subject of warrantless electronic surveillance by

the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.

4. Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes successive wiretaps conducted on the same individual.

5. Any and all documents relating to an attempt by the NSA to conduct warrantless electronic surveillance on an individual within the United States pursuant to the Order that failed to satisfy any set of predetermined conditions for warrantless electronic surveillance as established by any policy, procedure, notice, directive or practice.

6. Any and all documents relating to any audit or review of the NSA's program to conduct domestic warrantless electronic surveillance on individuals within the United States (hereinafter "the NSA program") pursuant to the Order since its execution, whether such audit or review was conducted internally by the NSA or externally, and whether such review or audit was conducted for the benefit of congressional or executive branch use.

7. Any and all documents that refer, reflect or relate to any concern, objection or question raised within the NSA about the NSA program conducted pursuant to the Order.

8. Any and all documents that reflect, refer or relate to communications with members of the United States Senate or House of Representatives about the NSA program to conduct domestic warrantless electronic surveillance, including, without limitation, copies of correspondence from or to members of Congress with any government person or agency about the NSA program.

9. Any and all documents that reflect, refer or relate to the names of any member of the United States Senate or House of Representatives who has been briefed or informed about the program.

10. Any and all documents relating to the dozen or more briefings to Congress about the NSA program referenced by Vice President Dick Cheney in his interview with ABC News "Nightline" on December 18, 2005, including without limitation any documents prepared for use in such briefings and any documents that reflect the attendees and dates of any such briefings. See Hope Yen, *Lawmakers Call for Investigation into Domestic Spying Program*, The Associated Press, Dec. 19, 2005, and attached hereto.

11. Any document that contains or relates to any "checklist" or list created either by the Department of Justice, the Federal Bureau of Investigation or the NSA for use in determining whether probable cause or any justification exists for the initiation of a warrantless electronic surveillance of an individual in the United States by the NSA pursuant to the Order, including, without limitation, copies of initial drafts of such a "checklist," any subsequent revisions to a checklist, and any checklists relating to a specific individual that was considered as a subject of electronic surveillance under the NSA program whether or not such individual was ever in fact subjected to it.

12. Any and all records relating to the NSA's electronic surveillance of Ohio trucker Iyman Fairs, who was reported as having been a subject of the NSA program and who was allegedly involved in a plot to destroy the Brooklyn Bridge, including without limitation any checklist or approval of the NSA's electronic surveillance of him. *See* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, and attached hereto.

13. Any and all records relating to a warrantless electronic wiretap conducted under the NSA program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including without limitation any checklist or approval of such electronic surveillance. *Id.*

14. All records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for or for their use during their press briefing on December 19, 2005 about the NSA program and the Order.

15. All records provided to or created for the White House in preparation or for its use during the news conference held by President Bush on December 19, 2005 about the NSA program and the Order.

16. Any and all NSA records relating to People For the American Way Foundation or People For the American Way.

As to Request Nos. 2 – 4, PFAWF is willing to accept a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Order, with the names of the targeted individuals or organizations redacted. Alternatively, PFAWF is also willing to accept redacted copies of the actual records responsive to Nos. 2-4. Because our primary interest is determining the total number of times the NSA has conducted electronic surveillance on individuals within the United States pursuant to the Order without having first obtained a court-approved warrant, and the number of persons subjected to that surveillance, either of these options are acceptable alternative responses to Request Nos. 2-4. This basic information on how many people have been wiretapped pursuant to the Order, and how many times such surveillance has occurred, should clearly be disclosed to the American people.

B. Request for Expedited Processing

PFAWF requests that you provide this information as soon as possible as it meets the criteria for expedited processing under the FOIA.

First, the requesting organization is primarily engaged in disseminating information to the public, that is, it is an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes them to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). PFAWF publishes news releases, media briefings, reports, and other materials that are disseminated to the public for its use in participating in the public discourse on important civil and constitutional rights. PFAWF's materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its research department. Requester also disseminates information through its Web site (www.pfaw.org). The Web site addresses civil liberties issues in depth, provides features on civil liberties issues in the news, and contains hundreds of documents that relate to the issues on which PFAWF is focused.

Second, records as to the NSA's electronic surveillance of individuals within the United States without a court approved warrant in violation of the Fourth Amendment is information that is "urgently needed to inform the public concerning some actual or alleged government activity." PFAWF is making this request specifically to further the public's understanding of the government's secret activities in its war on terrorism, a matter that is particularly pertinent in light of the Supreme Court's decisions in 2004 which made clear that there limits to the President's powers even during times akin to war, particularly when they infringe on the fundamental rights of American citizens.

Third, the NSA program of conducting secret electronic surveillance of Americans within the United States "is of widespread and exceptional media interest and the information sought involves possible questions about the government's integrity which affect public confidence." The exceptional interest in this matter is incontrovertible as prominent members of both parties have called for a congressional investigation into the NSA program since the New York Times first shed light of its existence last week. As public officials and the American people have made clear, the protection of civil liberties for citizens and non-citizens alike is one of this country's most fundamental promises. A small selection of news articles that reflect the strong public interest in the materials PFAWF seeks in our request is attached hereto.

Finally, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions as to its credibility and integrity. For over three years, the administration has authorized the NSA to conduct secret wiretaps of Americans despite its repeated assertions that it has been conducting its war on terrorism within the confines of the law. This newly discovered program is in direct contradiction to President Bush's own words in response to concerns about the erosion of civil liberties caused by the PATRIOT Act when he said: "[A]ny time you hear the United States government talking about wiretap, it requires - a wiretap requires a court order. Nothing has changed, by the way. When we're talking about chasing down terrorists, we're talking about getting a court order before we do so." *See* Remarks by the President in a Conversation on the USA Patriot Act on April 20, 2004 attached hereto. This newly discovered secret activity by the NSA raised serious questions that should be promptly answered about how many times the government has conducted warrantless wiretaps on individuals within the United States and who was aware of the program. The concern that the government has consistently sought to prevent the public and the media from monitoring its post 9/11 activities in any meaningful way seriously undermines public confidence in the government.

In sum, this request is about federal government activity, it concerns a matter of current exigency to the American public, and the consequences of delaying a response would compromise a significant recognized interest. *See Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001). This request for expedited processing should thus be granted and PFAWF looks forward to your reply within 20 business days, as the statute requires under Section 552(a)(6)(A)(I).

I certify that my statements concerning the need for expedited review are true and correct to the best of my knowledge and belief.

C.    Request for Fee Waiver

We request a waiver of the fees involved in the processing of this request for two reasons. First, PFAWF should be entitled to the exemption afforded news media and educational institutions because its mission is consistent with both types of organizations. As described above, PFAWF is primarily engaged in disseminating information to the public. It should, therefore, be afforded the same exemption granted educational and news organizations.

Second, PFAWF should be entitled to the waiver of any fees because the release of these records is indisputably in the public interest. As described above, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions that deserve an answer. The authorization and conduct of secret warrantless wiretaps of Americans directly violates one of the basic tenets of this country's constitutional guarantees and the public is entitled to know how many times and what manner the government has been engaging in such activity. These records cannot be obtained from other sources. PFAWF has expertise in

4

reviewing these types of records because we have, for many years, been involved in disseminating information about the government's conduct of the war on terrorism to the public - we have 750,000 members and regularly transmit information of public interest to our members and news media. Given the public's interest in the documents requested and PFAWF's expertise in reviewing and analyzing such documents, and PFAWF's ability to transmit information about these types of documents to a wide audience, PFAWF seeks a waiver of any fees associated with this request.

Thank you for your prompt attention to this matter.  Please respond to Elliot Mincberg, General Counsel, People For the American Way Foundation, 2000 M Street, NW, Suite 400, Washington, DC 20036, (202) 467-4999.

Sincerely,

Elliot Mincberg, General Counsel
People For the American Way Foundation

Enclosures

# EXHIBIT 2



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE. MARYLAND 20755-6000

FOIA Case: 47925
14 February 2006

Mr. Elliot Mincberg
People for the American Way Foundation
2000 M Street, NW
Suite 400
Washington, DC 20036

Dear Mr. Mincberg:

This responds to your Freedom of Information Act (FOIA) request submitted via facsimile on 29 December 2005, which was received by this office on 30 December 2005, for documents concerning the National Security Agency's collection program approved by President Bush (hereinafter referred to as "the program"). Specifically you requested the following items as they relate to the above (items below are paraphrased for ease of reference only; request letter language was used for processing the request).

1. All documents relating to individuals or organizations who were the subject of the program.

2. Documents reflecting the total number of individuals subject to surveillance under the program from the program's inception to the present.

3. Documents reflecting the total number of individuals subject to surveillance under the program from mid-2004 to the present.

4. Documents that reflect the total number of instances of surveillance under the program.

5. Documents relating to any attempts by NSA to conduct surveillance under the program on an individual in the U.S. that failed to satisfy any set of predetermined conditions for surveillance under the program.

6. Documents relating to any audit or review of the program, whether conducted internally or externally.

7. Documents that reflect any concern, objection or question raised within NSA about the program.

FOIA Case: 47925

8. Communications with members of Congress about the program.

9. Documents naming the members of Congress who have been briefed on the program.

10. Documents relating to Vice President Dick Cheney's briefings to Congress about the program.

11. Any "checklist" or list created by the Department of Justice, Federal Bureau of Investigation or NSA for use in determining cause or justification for surveillance of individuals in the U.S. under the program.

12. NSA's surveillance of Ohio trucker Lyman Fairs.

13. Records collected under the program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including any checklist or approval of such collection.

14. Records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for a 19 December 2005 press briefing about the program.

15. Records provided to or created for the White House in preparation for a new conference held by President Bush on 19 December 2005 about the program.

16. Records relating to People for the American Way Foundation or People for the American Way (which we interpret to mean as it relates to surveillance under the program).

Your request has been assigned Case Number 47925. For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. There are no assessable fees for this request; therefore, we did not address your request for a fee waiver.

As you know, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

FOIA Case:  47925

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens.  However, because of the highly classified nature of the program, we can neither confirm nor deny the existence of records responsive to the items numbered 12, 13, and 16 in your request.  The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended.  Thus, the items numbered 12, 13, and 16 in your request are denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute.  Thus, the items numbered 12, 13, and 16 in your request are also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption.  The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Regarding the items numbered 5, 14, and 15 in your request, we have determined that we do not have records responsive to those portions of your request.

Documents responsive to the item numbered 8 in your request are enclosed.  The names of NSA/CSS employees have been deleted from these enclosures.  This information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute.  The specific statute applicable in this case is Section 6, Public Law 86-36 (50 U.S. Code 402 note).

In addition, information regarding other individuals has been deleted from the enclosures in accordance with 5 U.S.C. 552 (b)(6).  This exemption protects from disclosure information which would constitute a clearly unwarranted invasion of personal privacy.  In balancing the public interest for the information you request against the privacy interests involved, we have determined that the privacy interests sufficiently satisfy the requirements for the application of the (b)(6) exemption.

Information responsive to the items numbered 1-4, 6-7, 9-11 of your request has been withheld in its entirety.  The information has been found to be currently and properly classified in accordance with Executive Order 12958, as amended.  The information meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended.  The

FOIA Case: 47925

information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities. Accordingly, this information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Finally, in addition to being exempt under exemptions 1 and 3, the information responsive to the items numbered 6, 7, 9, and 11 is also exempt from disclosure pursuant to the fifth exemption of the FOIA. This exemption applies to inter-agency or intra-agency memoranda or letters which would not be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product.

Since the items numbered 12, 13, and 16 of your request are denied; we did not locate records responsive to the items numbered 5, 14, and 15; and because information responsive to the items numbered 1-4, 6-8, and 9-11 is being withheld either in part or in its entirety, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD 20755-6248. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

FOIA Case: 47925

Finally, we have enclosed copies of two DIRGRAMs relating to the program that have been released to other requesters.

Sincerely,

LOUIS F. GILES
Director of Policy

Encls:
a/s