IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION,<br><br>       Plaintiff,<br><br>              v.<br><br>NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE,<br><br>       Defendant. | Civil Action No. 06-00206 (ESH) |

**STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by Local Rule 7.1(h), and in support of the Motion for Summary Judgment filed on behalf the National Security Agency ("NSA" or "the Agency"), NSA hereby makes the following statement of material facts as to which there is no genuine issue.

**Origin and Mission of the NSA**

1.   The National Security Agency ("NSA" or "the Agency") was established by Presidential Directive in 1952 as a separately organized agency within the Department of Defense.  Declaration of Louis F. Giles ("Giles Decl."), attached as Ex. A, ¶ 2.

2.   NSA has three functions: to collect, process, and disseminate signals intelligence information for national foreign intelligence purposes; to conduct information security activities; and to conduct operations security training for the U.S. Government.  Giles Decl. ¶ 2; see also Executive Order 12333, 46 Fed. Reg. 59941, § 1.12(b) (setting forth the responsibilities of NSA).

3.   Signals intelligence ("SIGINT") is one of NSA's primary functions.  Giles Decl. ¶ 3.

4. NSA's SIGINT mission include obtaining information from foreign electromagnetic signals and intercepting communications necessary to the national defense, national security, or the conduct of foreign affairs of the United States. Giles Decl. ¶ 3. NSA provides, frequently on a rapid response basis, reports derived from such information or data to national policy makers and the intelligence community of the United States Government. Id.

5. There are two primary reasons for gathering and analyzing intelligence information: the first, and most important, is to gain information required to direct U.S. resources as necessary to counter external threats. The second reason is to obtain information necessary to direct the foreign policy of the United States. Giles Decl. ¶ 5.

6. Information produced by SIGINT is relevant to a wide range of important issues, including military order of battle; threat warnings and readiness; arms proliferation; terrorism; and foreign aspects of international narcotics trafficking. Giles Decl. ¶ 5.

7. The SIGINT collection mission of NSA provides national policy makers and the intelligence community with highly reliable foreign intelligence information. Giles Decl. ¶ 4. This information is often critical to the formulation of U.S. foreign policy and the support of U.S. military operations around the world. Id. ¶ 5.

8. NSA's ability to produce foreign intelligence information depends upon its access to foreign and international electronic communications. Giles Decl. ¶ 7. Thus, NSA has developed a sophisticated worldwide SIGINT collection network to acquire these communications. Id. ¶ 6.

9. The technological infrastructure that supports NSA's foreign intelligence information collection has taken years to develop at a substantial cost and untold human effort. Giles Decl. ¶ 6. It relies on sophisticated collection and processing technology that is designed to

keep pace with challenging new technological developments.  Id. ¶ 4.

10.  Foreign intelligence information produced by NSA as a result of its SIGINT mission is often unobtainable by other means.  Giles Decl. ¶ 5.

11.  A fundamental tenet of NSA's communications collection process is that the identity of specific communications (referred to as "targets"), the degree of success in exploiting these targets, the vulnerability of particular foreign communications, and the extent of any cryptologic successes are matters that must be maintained in the strictest secrecy.  Giles Decl. ¶ 8.

12.  NSA's SIGINT technology is both expensive and fragile.  Giles Decl. ¶ 7; see also Declaration of Joseph B. ("NSA Decl.")[1], attached as Ex. C, ¶ 5.  Disclosure of the identities of targets, the degree of success or weakness in exploiting those targets, the vulnerabilities of particular foreign communications, and the extent of any cryptologic success would encourage countermeasures by the targets of NSA's efforts.  Giles Decl. ¶ 8.

13.  Public disclosure of either the capability to collect specific communications or the substance of the information itself can easily alert targets to the vulnerability of their communications.  Giles Decl. ¶ 7; see also NSA Decl. ¶ 5.  Thus, disclosure of even a single communication has the potential to reveal the intelligence collection techniques that are applied against targets around the world.  Giles Decl. ¶ 7.

14.  Once alerted that NSA is targeting their communications, a target can easily frustrate SIGINT collection by taking steps to evade detection, to manipulate the information that NSA receives, or to implement other countermeasures aimed at undermining NSA's operations,

---

[1] Although the substance of the declaration provided by the second NSA declarant may be placed on the public record, the identity of that declarant cannot be publicly revealed.  See NSA Decl. n.1.

such as, for example, using different communications techniques or utilizing a different communications link. NSA Decl. ¶¶ 5, 13; see also Giles Decl. ¶ 7.

15.   If a target is successful in defeating an intercept operation, all of the intelligence from that source is lost until and unless NSA can establish a new and equivalent exploitation of the target's signals. Giles Decl. ¶ 8. If a source becomes unavailable, the military, national policymakers, and the intelligence community must operate without the information such signals provided. Giles Decl. ¶ 8. These intelligence losses are extremely harmful to the national security of the United States. Id.; NSA Decl. ¶ 5.

## The Terrorist Surveillance Program

16.   The "Terrorist Surveillance Program," or "TSP" is a SIGINT program. NSA Decl. ¶ 4.

17.   The President publicly acknowledged the existence of the TSP on December 17, 2005. NSA Decl. ¶ 4.

18.   Details about the TSP remain highly classified and subject to special access restrictions under the criteria set forth in Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003). NSA Decl. ¶ 4.

19.   Unauthorized disclosure of information regarding the TSP can be expected to cause exceptionally grave damage to the national security of the United States, and thus, pursuant to the criteria outlined in Executive Order 12958, as amended, information related to the TSP is classified TOP SECRET. NSA Decl. ¶ 4.

20.   Moreover, because information related to the TSP involves or derives from particularly sensitive intelligence sources and methods, it is subject to the special access and

handling procedures reserved for Sensitive Compartmented Information ("SCI"). NSA Decl. ¶ 4.

21. Loss of accurate intelligence information derived from the TSP could result in the catastrophic failure of the early warning system that the President has established to detect and prevent the next terrorist attack. NSA Decl. ¶ 5.

### The Plaintiff's FOIA Request

22. On December 29, 2005, plaintiff submitted a FOIA request to NSA, seeking information regarding the TSP. Giles Decl., Ex. 1. Plaintiff sought information in 16 categories. Id.

23. In response to plaintiff's FOIA request, NSA undertook a search for those categories of documents which were most likely to contain information responsive to plaintiff's specific requests. NSA Decl. ¶ 8; Giles Decl. ¶¶ 12-13.

24. On February 14, 2006, NSA responded to plaintiff's FOIA request. Giles Decl. ¶ 9 & Ex. 2. NSA produced 106 pages of documents responsive to plaintiff's request numbered 8 with certain redactions; advised that it had no records responsive to plaintiff's requests numbered 5, 14, and 15; explained that it could not confirm or deny the existence of records responsive to plaintiff's requests numbered 12, 13, and 16; and withheld information responsive to plaintiff's requests numbered 1-4, 6-7, and 9-11 pursuant to the exemption provisions of FOIA, 5 U.S.C. § 552(b). See Giles Decl. Ex. 2.

    Respectfully submitted,

    PETER D. KEISLER
    Assistant Attorney General, Civil Division

    KENNETH J. WAINSTEIN
    United States Attorney

    JOSEPH H. HUNT
    Director, Federal Programs Branch

-6-

                          ELIZABETH J. SHAPIRO
                          Assistant Director, Federal Programs Branch


                        ____*/s/ Rupa Bhattacharyya*_____
                        RUPA BHATTACHARYYA (VA# 38877)
                        Senior Trial Counsel
                        Federal Programs Branch, Civil Division
                        United States Department of Justice
                        P.O. Box 883, 20 Massachusetts Ave., N.W.
                        Washington, D.C.  20044
                        Tel: (202) 514-3146
                        Fax: (202) 318-7593
Dated:   May 9, 2006.                Email: rupa.bhattacharyya@usdoj.gov