## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION )<br><br>Plaintiff, )<br><br>v. )<br><br>NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE )<br><br>Defendant. ) | Civil Action No. 06-00206 |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by and through its undersigned counsel, hereby moves for partial summary judgment with respect to its Freedom of Information Act requests two through four pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____/s/_____
MICHAEL L. MARTINEZ
DC Bar No. 347310
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20036
(202) 624-2945 (telephone)
(202) 628-5116 (facsimile)
Email: mmartinez@crowell.com

Elliot M. Mincberg
People For the American Way
Foundation

200 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)
Email: emincberg@pfaw.org

DEBBIE LIU
People For the American Way
Foundation

JOHN MCCARTHY
Crowell & Moring, LLP

CHRISTOPHER GAGNE
Crowell & Moring, LLP

CHRISTOPHER CALSYN
Crowell & Moring, LLP

Dated: July 24, 2006.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION<br><br>         Plaintiff,<br><br>    v.<br><br>NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-00206 |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

As required by Local Rule 7.1(h), and in support of its Motion for Partial Summary Judgment, People for the American Way Foundation ("PFAWF") hereby makes the following statement of material facts as to which there is no genuine issue with respect to its Freedom of Information Act ("FOIA") requests numbered two through four.[1]

### PFAWF's Response to Defendant's Statement of Material Facts with Respect to

### PFAWF's FOIA Requests 2-4

1.    Although Plaintiff does not agree that a number of the facts asserted in Defendant's Statement of Material Facts are material in this case, Plaintiff does not specifically dispute these facts, except with respect to Defendant's statement 19 to

---

[1] PFAWF tendered sixteen FOIA requests to the Defendant via letter on December 29, 2005.

the extent that it implies that the information requested by Plaintiff in its FOIA requests two through four "can be expected to cause exceptionally grave damage to the national security of the United States," and therefore should be classified as TOP SECRET. Def.'s Statement of Material Facts.

PFAWF's FOIA Request

2.    PFAWF submitted a FOIA request to the National Security Agency ("NSA") on December 29, 2005 regarding records related to the NSA's warrantless wiretapping program and requested expedited processing. Letter from Elliot Mincberg, General Counsel for Plaintiff, to Defendant's FOIA Officer (December 29, 2005).

3.    Defendant failed to respond within the statutory time limits contemplated under FOIA. 5 U.S.C. § 552(a)(6).

4.    Plaintiff filed a Complaint for Declaratory an Injunctive Relief in this Court on February 6, 2006. Compl. at 6.

Defendant's "Factual" Basis for Its Motion for Summary Judgment

5.    As the factual basis for its Motion for Summary Judgment with respect to Plaintiff's FOIA requests two through four, Defendant relies solely on the conclusory and generalized statements in the two affidavits it submitted in support of its Motion. NSA Decl.; Giles Decl.

Publicly-Released Statistics Similar to Those Requested by PFAWF

6.    In May 2006, the U.S. Department of Justice ("DOJ") released the number of warrants approved by the Foreign Intelligence Surveillance Court for the

same type of electronic surveillance at issue in this case.  Tom Brune, <u>Increase in</u>
<u>Domestic Spying: Justice Department Official Says Domestic Surveillance Efforts</u>
<u>Rose by Nearly a Fifth in 2005 from Prior Year</u>, (May 2, 2006); available at
*http://www.newsday.com/news/nationworld/nation/ny-*
*usspy024725905may02,0,3410310.story.*

      7.     In May 2006, DOJ also disclosed the number of Federal Bureau of
Investigation ("FBI") requests for business records of individuals under Section 215
of the PATRIOT Act.  <u>Id</u>.

<u>Estimated Numbers of Individuals Subject to Defendant's Warrantless Wiretapping</u>
<u>Program</u>

      8.     Media reports based on unofficial leaks from the NSA estimate
approximately 5,000 individuals have been subjected to Defendant's warrantless
wiretapping program.  Barton Gellman, Dafna Linzer and Carol D. Leonnig,
<u>Surveillance Net Yields Few Suspects NSA's Hunt for Terrorists Scrutinizes</u>
<u>Thousands of Americans, but Most Are Later Cleared</u>, Wash. Post, Feb. 5, 2006, at
A1.

3

Respectfully submitted,


_____/s/_____
MICHAEL L. MARTINEZ
DC Bar No. 347310
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20036
(202) 624-2945 (telephone)
(202) 628-5116 (facsimile)
Email: mmartinez@crowell.com

Elliot M. Mincberg
People For the American Way
Foundation
200 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)
Email: emincberg@pfaw.org

DEBBIE LIU
People For the American Way
Foundation

JOHN MCCARTHY
Crowell & Moring, LLP

CHRISTOPHER GAGNE
Crowell & Moring, LLP

CHRISTOPHER CALSYN
Crowell & Moring, LLP

Dated: July 24, 2006.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION )<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br>NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE )<br><br>)<br>Defendant. )<br><br>) | Civil Action No. 06-00206 |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS A GENUINE ISSUE

As required by Local Rule 7.1(h), and in support of its Opposition to

Defendant's Motion for Summary Judgment, People for the American Way

Foundation ("PFAWF") hereby makes the following statement of material facts as to

which there is a genuine issue with respect to its Freedom of Information Act

("FOIA") requests numbered six and sixteen.[1]

PFAWF's Response to Defendant's Statement of Material Facts with Respect to

PFAWF's FOIA Requests Six and Sixteen

1.     Although Plaintiff does not agree that a number of the facts asserted in

Defendant's Statement of Material Facts are material in this case, Plaintiff does not

---

[1] On December 29, 2005, Plaintiff tendered via letter to Defendant sixteen FOIA requests regarding the NSA's warrantless wiretapping program.

specifically dispute these facts, except with respect to Defendant's statement 19 to the extent that it implies that the information requested by Plaintiff in its FOIA requests six and sixteen "can be expected to cause exceptionally grave damage to the national security of the United States," and therefore should be classified as TOP SECRET.  Def.'s Statement of Material Facts.

Respectfully submitted,

_____/s/_____

MICHAEL L. MARTINEZ
DC Bar No. 347310
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20036
(202) 624-2945 (telephone)
(202) 628-5116 (facsimile)
Email: mmartinez@crowell.com

Elliot M. Mincberg
People For the American Way
Foundation
200 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)
Email: emincberg@pfaw.org

DEBBIE LIU
People For the American Way
Foundation

JOHN MCCARTHY
Crowell & Moring, LLP

CHRISTOPHER GAGNE
Crowell & Moring, LLP

CHRISTOPHER CALSYN
Crowell & Moring, LLP

Dated: July 24, 2006.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-00206<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PEOPLE FOR THE AMERICAN WAY FOUNDATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently before the Court is Defendant's Motion for Summary Judgment in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case which arises out of a FOIA request by Plaintiff that requested 16 different classes of documents.[1]  In response to that motion, Plaintiff, People For the American Way Foundation ("PFAWF"), opposes Defendant's motion and seeks summary judgment in its favor with respect to requests 2-4.  With respect to requests 6 and 16, PWAWF opposes Defendant's Motion for Summary Judgment.  Plaintiff withdraws its remaining requests 1, 5, and 7-15.

---

[1]    "Requests" refers to the specifically numbered items in Plaintiff's FOIA request dated December 29, 2005 and which forms the basis of this case.  A copy of the request is attached hereto as Exhibit 1.

## INTRODUCTION

PFAWF seeks the disclosure and release under the Freedom of Information Act ("FOIA") of agency records improperly withheld from it by the National Security Agency/Central Security Service ("NSA"). Following the attacks of September 11, 2001 the United States Government (the "Government") pursued a policy which involved secret electronic surveillance of individuals within its borders without the approval of a court or judge and without explicit authorization by Congress. This secret surveillance program was authorized by President Bush via a secret Executive Order granting the NSA the authority to conduct warrantless electronic surveillance on individuals in the United States. Bush Says He Signed NSA Wiretap Order, CNN.com, (Dec. 17, 2005), at http://www.cnn.com/2005/POLITICS/12/17/bush.nsa/index.html (last visited July 19, 2006). The secret surveillance programs and other unilateral actions by the federal executive branch have become increasingly common since September 11, 2001, and have generated tremendous public interest and debate. See Katherine Shrader, DOJ: NSA Could've Monitored Lawyers' Calls, Associated Press (Mar. 25, 2006); Eric Lichtblau, Bush Would Let Secret Court Sift Wiretap Process, N.Y. Times, July 14, 2006 at A1; Carol D. Leonnig, Report Rebuts Bush on Spying; Domestic Action's Legality, Wash. Post, Jan. 7, 2006, at A1. PFAWF and its members and supporters have a substantial interest in informing the public concerning the secret surveillance program, such as how many individuals and communications the NSA has targeted with its warrantless surveillance.

## PROCEDURAL HISTORY

On December 29, 2005, PFAWF submitted a FOIA request to the NSA for records relating to the secret surveillance program and requested expedited processing. As an alternative to full production of some of the documents, PFAWF's letter stated that it would accept "a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Executive Order, with the names of the targeted individuals or organizations redacted."

On February 6, 2006, after the NSA failed to respond at all to PFAWF's FOIA request and request for expedited processing within the statutory time required, PFAWF filed a Complaint for Declaratory and Injunctive Relief in this court. On February 14, 2006, NSA finally responded, denying most of PFAWF's FOIA requests. However, NSA did produce a press release as well as some correspondence with certain Democratic members of Congress after the existence of the program became known to the public in which those legislators requested and NSA refused to provide information about this secret surveillance program.

On May 9, 2006 NSA filed a Motion for Summary Judgment. PFAWF hereby responds, as noted in the introduction, by opposing the motion and cross-moving for summary judgment on requests 2-4 and by opposing the motion as to requests 6 and 16.

3

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FOIA REQUESTS 2-4

PFAWF seeks partial summary judgment under FOIA for the disclosure of the statistical information in requests 2-4 pertaining to the total number of individuals and communications subject to the NSA's secret surveillance program. Requests 2-4 sought from the NSA the following information:

> 2. Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Order since the date of the Order up to the date of this request.
> 3. Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of warrantless electronic surveillance by the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.
> 4. Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes successive wiretaps conducted on the same individual.

Ex. 1 at 2-3. With respect to these requests, PFAWF stated it is "willing to accept a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Order with the names of the targeted individuals or organizations redacted. Alternatively, PFAWF is also willing to accept redacted copies of the actual records responsive to Nos. 2-4." Id. at 3.

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment where, as here, the evidence demonstrates "that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Once the moving party presents a well-supported motion, summary judgment must be granted if the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, in order to survive summary judgment, the NSA must "make a showing sufficient to establish the existence of [each] element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322). In the absence of such a showing, "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

In its response to PFAWF's FOIA requests and in its Motion for Summary Judgment, the NSA claims that requests 2-4 are shielded from FOIA requests under FOIA Exemptions One and Three. The NSA has offered few, if any, facts in support of these assertions. Moreover, what Defendant has offered by way of allusion and legal comparison is legally insufficient to exempt the requested information. Thus, the NSA has shown a "complete failure of proof concerning an essential element" of its case and PFAWF is entitled to judgment as a matter of law as to requests 2-4. See id.

I.    **FOIA Exemption One Does Not Apply to the Total Number of Individuals and Communications Subject to the NSA's Secret Surveillance Program**

Exemption One does not apply to the total number of individuals and communications subject to the NSA's secret surveillance program because disclosing such information could not reasonably be expected to result in damage to the national security.  Congress enacted the Freedom of Information Act to implement a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language" and, accordingly, the exemptions listed under FOIA are exclusive and should be narrowly construed. Dep't of the Air Force v. Rose, 425 U.S. 352, 360-61 (1976) (quoting S.Rep. No. 89-813 at 3 (1965)). Exemption One protects from disclosure materials "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).

Executive Order 13292 identifies the categories for proper classification of information, which include "intelligence activities (including special activities), intelligence sources or methods, or cryptology."  Exec. Order 13292, 68 Fed. Reg. 15315 § 1.4 (Mar. 25, 2003).  Section 1.2 of the Order, however, requires classification only where its unauthorized disclosure "reasonably could be expected to result in damage to the national security."  Id. §1.2.  But in some cases even properly classified information may be disclosed if the public interest in disclosure outweighs the need to protect it.  Id. § 3.1(b).  Moreover, an agency may never

classify information in order to "conceal violations of law, inefficiency, or administrative error," "to prevent embarrassment," or to "prevent or delay the disclosure of information that does not require national security protection." Id. § 1.7.

As the NSA itself admits in its Motion for Summary Judgment, in order to invoke Exemption One, an "agency must provide 'detailed and specific' information demonstrating both 'why the material has been kept secret and why such secrecy is allowed by the terms of'" the Executive Order above.  Defendant's Motion for Summary Judgment ("NSA Motion"), 18 (quoting American Civil Liberties Union v. U.S. Dept. of Justice ("ACLU I"), 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (Huvelle, J.); see also Halperin v. CIA, 629 F.2d 144, 148 (D.C.Cir. 1980) (stating that the agency's affidavits must contain "reasonable specificity of detail rather than merely conclusory statements...."). Although the courts accord "substantial weight" to an agency's affidavits justifying classification, they do so "without relinquishing their independent responsibility." Goldberg v. U.S. Dep't of State, 818 F.2d 71, 77 (D.C. Cir. 1987).  Thus, this "deference is not the equivalent to acquiescence" and "conclusory and generalized allegations of exemptions" are not enough to justify secrecy. Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (stating that "deference is not the equivalent to acquiescence"); Vaughn v. Rosen, 484 F.2d 820, 826 (asserting that "conclusory and generalized allegations of exemptions" are insufficient grounds for withholding information).

PFAWF requests only the *total number* of individuals subject to the secret surveillance program from its inception to the present and the *total number* of communications subject to the NSA's Secret Surveillance Program during the same period and for the period of mid-2004 to the present.  Notably, PFAWF does not request any information about the individuals themselves, the content of the communications, or even the type of communications intercepted.  Nonetheless, the NSA baldly asserts that disclosing even this generalized information "obviously and immediately" affects the NSA's ability "to detect and prevent the next terrorist attack against the United States."  NSA Motion at 21.  The only support offered for this grave and sweeping assertion is the Declaration of Joseph B. ("NSA Decl."). Id. But the Declaration merely states without explanation that "statistics relating to the operation of [the secret surveillance program] would reveal information about NSA's *success or lack of success* in implementing" the program and cautions that "[t]he disclosure of NSA's ability or lack of ability to access or intercept *an individual's* communications reveals 'information about the U.S. intelligence community's capabilities, priorities, and activities.'"  NSA Decl. ¶12. (citations omitted) (emphasis added).

The bare assertion, without more, that the total number of individuals and communications subject to the NSA's secret surveillance program reveals anything about the "success or lack of success" is hardly "detailed and specific."  See, e.g., ACLU I, 265 F.Supp.2d at 28-29 (listing government arguments that explained with "detail and specificity" how specific pieces of requested information "would provide

hostile agents with an evaluation of hostile intelligence plans and programs that have or have not been compromised and allow them to devise countermeasures to circumvent" those plans).  Small totals could indicate either a high degree of precision or a lack of capability while large numbers could suggest either high levels of terrorist activity or NSA fishing expeditions.

Moreover, even if such abstract figures did provide insight into the program's success or lack thereof, the NSA does not explain how these numbers reveal the "ability or lack of ability to access or intercept *an individual's* communications" since PFAWF is not seeking information pertaining to individuals and no such information is publicly available.  See NSA Decl. ¶ 12.  It is similarly hard to understand, based on the NSA's affidavits, how PFAWF's request would reveal the NSA's "ability or lack of ability" to intercept communications more generally.  The total number of individuals and communications subject to the secret surveillance program does not disclose whether the communications were successfully tapped or whether they generated useful information.  Nor do these numbers reveal the types of communications intercepted or the program's technical limitations, unless the NSA means to suggest that the secret surveillance program is intercepting every single electronic communication that its systems can possibly handle.  Even then, the information PFAWF requests would only reveal those maximum capabilities over a span of several years without any indication of the program's current capabilities.

To the extent that the NSA relies upon <u>ACLU I</u> in support of its argument for Exemption One, that case is readily distinguishable.  In <u>ACLU I</u>, the plaintiff sought the number of times the Department of Justice used each of four specific surveillance tools under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 et seq., and the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT Act"), 115 Stat. 272 (Oct. 26, 2001), and both statutes provided some detail as to what these tools were and how they were to be used.  <u>ACLU I</u>, 265 F.Supp. at 25; 18 U.S.C. § 3103a(b), 50 U.S.C. §§ 1805(c)(2)(b), 1842(a)(1), 1861(b)(2).  In contrast, the aggregate information that PFAWF seeks is far more general, especially since the government has yet to reveal with any specificity what the NSA's methods are or how they are implemented.

Similarly, the NSA's reliance upon <u>Ctr. for Nat'l Security Studies v. U.S. Dept. of Justice</u>, 331 F.3d 918 (D.C. Cir., 2003), <u>cert. denied</u>, 540 U.S. 1104 (2004) and <u>Students Against Genocide v. Dept. of State</u>, 257 F.3d 828 (D.C. Cir. 2001) is also misplaced.  <u>Ctr. for Nat'l Security Studies</u> upheld an agency's denial of a request for documents relating to dates and locations of arrest, detention, and release of terrorist suspects because such information "would provide a complete roadmap of the government's investigation.... Terrorists could learn from this information not only where the government focused its investigation but how that investigation progressed step-by-step." 331 F.3d at 933.  No such roadmap arising from Plaintiff's requests 2-4 is plausible in this case.  Moreover, unlike <u>Students</u>

<u>Against Genocide</u>, PFAWF is not requesting information that "identifies the targets whose communications have been exploited." <u>See</u> 257 F.3d at 840.

From this springboard of vaguely-asserted "facts" and inapposite cases, the NSA leaps to the conclusion that disclosing the total number of individuals and communications subjected to the NSA's secret surveillance program would "provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection." This conclusory and similarly sweeping assertion has not been proven, nor could it be proved, in camera or otherwise, given PFAWF's limited request for generalized statistics. Thus, the NSA has failed to show that the disclosure "reasonably could be expected to result in damage to the national security" as required under Executive Order 13292, section 1.2 and, by extension, 5 U.S.C. § 552(b)(1) of FOIA.

Finally, it is implausible at best that the mere disclosure of these bare statistics – simply numbers – reasonably could be expected to result in damage to national security, and there certainly is no evidence of that on this record. In fact, there have already been several disclosures of similar statistical information over the course of the government's war on terrorism without any apparent or tangible effect on national security. For example, as provided by Congress, in May 2006, the Justice Department released the number of warrants approved by the Foreign Intelligence Surveillance Court for the same type of electronic surveillance reportedly conducted by the NSA. According to a report given to Congress and

made available to the media, there were 2,072 such warrants approved in 2005 and

1,754 in 2004.[2]   The same DOJ report also disclosed the number of FBI requests

for the business records of individuals under Section 215 of the PATRIOT Act – 155

in 2005, up from 35 in the previous two years.[3] The government's disclosures of

these numbers, without apparent harm to national security, belie its assertions in

the instant case that revelation of the number of NSA wiretaps would jeopardize

national security by revealing the government's methods, ability or lack of ability,

priorities or activities.

In fact, media reports based on unofficial leaks have placed the number of

people subjected to the NSA's secret surveillance program at approximately 5,000.[4]

The public interest in this case compels disclosure and this Court should so

hold.  See Exec. Order 13292, § 3.1(b).  As public officials and the American people

have made clear, the protection of civil liberties for citizens and non-citizens alike is

one of this country's most fundamental promises. The government's secret activities

in its war on terrorism are a matter of exceptional public interest, particularly when

---

[2] Tom Brune, Increase in Domestic Spying: Justice Department Official Says Domestic Surveillance Efforts Rose by Nearly a Fifth in 2005 from Prior Year, (May 2, 2006); available at *http://www.newsday.com/news/nationworld/nation/ny-usspy024725905may02,0,3410310.story.*

[3] Id.

[4] Barton Gellman, Dafna Linzer and Carol D. Leonning, Surveillance Net Yields Few Supsects NSA's Hunt for Terrorists Scrutinizes Thousands of Americans, but Most Are Later Cleared, Wash. Post, Feb. 5, 2006, at A1.  ("The Bush administration refuses to say how many Americans in the past four years [were] wiretapped without court authority, yet leaked figures estimate approximately 5,000 have been the victims of wiretapping.")

they may infringe on fundamental rights, as is the case with the NSA's domestic spying program. Under these facts, basic information on how many people have been wiretapped pursuant to the NSA's domestic wiretapping program, and how many times such surveillance has occurred, should clearly be disclosed to the American people.

In <u>ACLU I</u>, this Court acknowledged that the plaintiffs had a "compelling argument" that disclosing information about the scope of the DOJ's specific surveillance activities would "help promote democratic values and government accountability." <u>ACLU I</u>, 265 F.Supp.2d at 31. That case arose in a political environment similar to today's. The PATRIOT Act was less than a year old when the ACLU sought information on its use and, as this Court observed, the Act had "engendered controversy and debate." <u>Id.</u> at 24.

The NSA's domestic spying program has engendered similar controversy and debate, but this debate has largely occurred in the dark, with few details and no congressional record because the executive has deliberately evaded legislative purview. Under these circumstances, the public has an even greater interest in the general scope of the NSA's domestic surveillance program than it did in particular invocations of the USA PATRIOT Act since the NSA's entire program is arguably unconstitutional. Thus, the need for disclosure here even more compelling than in <u>ACLU I</u>.

## II. FOIA Exemption Three Does Not Apply to the Total Number of Individuals and Communications Subject to the NSA's Secret Surveillance Program

Exemption Three protects from disclosure matters that are specifically exempted through another statute provided said statute: (a) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). The NSA cites to three statutes under this exemption as a basis to withhold from Plaintiff information sought in requests 2-4: 18 U.S.C. § 798, 50 U.S.C. § 403-1(i), and Section 6, Public Law 86-36 (50 U.S.C. § 402 note). NSA Motion at 11-13. None of these statutes shield the total number of individuals and communications subject to the NSA's secret surveillance program from public disclosure.

First, 18 U.S.C. § 798 criminalizes the disclosure of "classified information...(3) concerning the communication intelligence activities of the United States or any foreign government which is governed by Executive Order 13292." Id. § 798(a). Section 798(b) defines "communications intelligence" as "all *procedures and methods* used in the interception of communications and the obtaining of information from such communications by other than the intended recipients." Id. § 798(b) (emphasis added). Since PFAWF is not requesting information concerning "procedures and methods" for intercepting communications, its request for the total number of individuals and communications subject to the NSA's secret surveillance program falls outside the scope of this statute. See id.; Section I, supra. Moreover, the statute only criminalizes "classified information," which is governed by Exec. Order 13292. Id. As described in Section I above, the statistical information at

14

issue here has not been properly classified as it could not reasonably be expected to result in damage to the national security. See Exec. Order 13292, § 1.2. And even if properly classified, the public interest in disclosing this information outweighs the need to hide it given the urgency of the constitutional debate over the secret surveillance program and the vagueness of whatever harm may result from the publicized figures. See id. § 3.1(b); Section I, supra.

Second, 50 U.S.C. § 403-1(i)(1) is similarly inapplicable. This statute states that "the Director of National Intelligence shall protect intelligence *sources and methods* from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1) (emphasis added). Since PFAWF is not requesting information regarding intelligence "sources and methods", its request for the total number of individuals and communications subject to the NSA's secret surveillance program falls outside the scope of this statute as well. See id.; Section I, supra.

Finally, Section 6 of Public Law 86-36, though the broadest of the statutes the NSA invokes under Exemption Three, is not without limits and "[b]arren assertions that an exempting statute has been met cannot suffice to establish that fact." Founding Church of Scientology of Washington, D.C., Inc. v. NSA, 610 F.2d 824, 831 (D.C.Cir. 1979). This statute provides:

> [N]othing in this Act or any other law...shall be construed to require disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency.

50 U.S.C. § 402 note.  Since PFAWF is not requesting the disclosure of any function

of the NSA not known to the public or any information about its employees, the only

way this statute would apply is by characterizing the total number of individuals

and communications subject to the NSA's secret surveillance program as

"information with respect to the activities" of the NSA.  See id.  But the United

States Court of Appeals for the D.C. Circuit, interpreting this very language, has

observed that "a term so elastic as 'activities' should be construed with sensitivity to

the 'hazard(s) that Congress foresaw'" and "'courts must be particularly careful

when scrutinizing claims of exemptions based on such expansive terms.'"  Founding

Church, 610 F.2d at 829 (citations omitted).  To be sure, Congress foresaw that the

need to protect the "unique and sensitive activities of the Agency" might require

"extreme security measures."  S.Rep. No. 284, 86th Cont., 1st Sess. 3 (1959) (letter

from Office of Secretary of Defense to President of the Senate and Speaker of the

House).  But Congress also noted that the "exemption would be consistent with

legislation in effect with respect to other agencies similarly engaged in highly

classified defense activities."  Id. at 2.

   Presumably, the NSA understands what is "unique and sensitive" about its

activities at least as well as Congress did when it passed Public Law 86-36.  But the

NSA's own characterization of its activities does not explain how they are so

"fragile" as to preclude disclosure of the total number of individuals and

communications subject to the NSA's secret surveillance program.  For example, the

Declaration of Joseph B. identifies the need to protect the following information:

"capabilities and priorities"; "analytical successes, weaknesses, and exploitation techniques"; "sources or methods, or cryptology"; "vulnerabilities or capabilities of systems"; "success or lack of success in implementing the [secret surveillance program]"; "ability or lack of ability to access or monitor an individual's communications for interception"; "capability to collect specific communications"; "frequency with which [specific communications are] collected"; "vulnerability of [a target's] communications"; "types of communications that may be susceptible to NSA detection"; "details about the operation of the [secret surveillance program]"; and "[the program's] strengths and vulnerabilities."  NSA Decl. at ¶¶ 4-20.  The NSA has not explained how disclosing the documents or data that PFAWF requests for generalized statistics would compromise any of this information.  See id.

As explained in Section I above, the total number of individuals and communications subject to the NSA's secret surveillance program over extended periods of time reveals nothing of the program's past or present techniques, vulnerabilities, capabilities, successes or failures.  Neither does it reveal any information about the NSA's sources and methods.  Thus, under the careful scrutiny required under Founding Church, an interpretation of 50 U.S.C. § 402 note that shields even the generalized information PFAWF seeks would hardly "be consistent with legislation in effect with respect to other agencies similarly engaged in highly classified defense activities" as Congress had intended.  See 610 F.2d at 829; S. Rep. No. 284 at 2.  To hold otherwise would effectively grant the NSA unlimited discretion to withhold even the most innocuous information from public scrutiny

because it in some way relates to NSA "activities."  See Founding Church, 610 F.2d at 829.

There is precedent for disclosure in the face of 50 U.S.C. § 402 note.  In Hayden v. National Security Agency, 452 F.Supp. 247, 253 (D.D.C. 1978), Judge Corcoran of this Court ordered the NSA to disclose the number of documents and pages it withheld from two plaintiffs' FOIA requests.   The court noted "[w]e fail to see how the revelation of this information could result in disclosing intelligence methods or sources of NSA functions and activities." Hayden, 452 F.Supp. at 252. Here, as with the request in Hayden, the disclosure of aggregate statistics over a period of two or five years reveals nothing of "intelligence methods or sources of NSA functions and activities." See id.

## PLAINTIFF'S OPPOSITION TO NSA'S MOTION FOR SUMMARY JUDGMENT ON FOIA REQUESTS 6 and 16

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 322; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C.Cir. 1995).  In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the

benefit of any doubt as to the existence of any genuine issue of material fact.
Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970).

PFAWF opposes the NSA's motion with regard to request 6, in particular
with respect to  documents reflecting outside determinations about the legality of
the secret surveillance program.  While the NSA alleges all such documents are
exempt from disclosure under Exemptions One and Three of FOIA, those
exemptions would apply only to properly classified information within those
documents.  To the extent that unclassified material in those legal determinations
can be segregated, the NSA must do so.  5 U.S.C. § 552; see Krikorian v. Dep't of
State, 984 F.2d 461, 466-67 (D.C. Cir. 1993) (remanding for failure to "make specific
findings of segregability for each of the withheld documents"); Oglesby v. United
States Dep't of the Army, 920 F.2d 57, 66 n.12 (D.C. Cir. 1990) (noting failure of
Army affidavit to specify whether any reasonably segregable portions of 483-page
document were withheld pursuant to Exemption 1); see also Harper v. DOD, No. 93-
35876, 1995 WL 392032, at *2 (9th Cir. July 3, 1995) (reversing part of district court
order that permitted agency to withhold entire report under Exemption 1, because
district court failed to make "necessary findings" on segregability).  Furthermore,
the NSA's invocation of FOIA Exemption Five is inappropriate where the
documents are not predicisional and do not reflect privileged facts or legal strategy.
As with the other FOIA exemptions, the NSA must at least describe these
documents and the justifications for nondisclosure under Exemption Five with

"reasonably specific detail." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C.Cir. 1981). It has not done so.

PFAWF also opposes the NSA's motion for summary judgment on request 16 for records relating to PFAWF or the People for the American Way ("PFAW") as they relate to the secret surveillance program. Ex. 1 at 3. The NSA's refusal to confirm or deny the existence of such records is dependent upon, yet not supported by either FOIA Exemption One or Exemption Three. Thus, the NSA must at the very least confirm or deny such records and should submit a Vaughn index of any such records, if they exist, for in camera review. See Judicial Watch, Inc. v. Dep't of the Army, 402 F.Supp.2d 241, 245 (D.D.C. 2005) (citing Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998) and Vaughn, 484 F.2d 820).

I.    **Opposition to NSA's Motion for Summary Judgment on Request 6**

PFAWF's FOIA request 6 includes documents relating to any audit or review of the program, whether conducted internally or externally. This request would logically include determinations about the legality of the secret surveillance program. In his Senate confirmation hearings on March 18, 2005, General Michael Hayden ambiguously described the legal discussions surrounding the NSA's implementation of the secret surveillance program. See Hearing on the Nomination of Gen. Michael Hayden to be Director of the CIA before the S. Select Comm. on Intelligence, 109th Cong. (2006) (statement of General Michael Hayden, Principal Deputy Director of National Intelligence). Hayden's statements are unclear as to whether the NSA possesses written memoranda on the topic. See id.

But he did acknowledge a "legal opinion from Justice" and noted that the Office of Legal Counsel of the Department of Justice, the White House counsel and three, trusted NSA lawyers all had "told," "opined," and "assured" him that the program was lawful.  Id.  Thus, there may exist legal opinions from the Department of Justice and the White House, along with an October 4th Attorney General order, concerning the warrantless wiretapping program.  See id.

While the NSA's Motion does not discuss such legal determinations explicitly, it asserts that all documents covered by request 6 are exempt from disclosure under FOIA Exemption One, Exemption Three, and Exemption Five.  The NSA does not, however, justify these exemptions in reasonably specific detail.  At the very least, the NSA must provide a Vaughn index, which describes each document herein requested and explains the exemption's relevance to each in reasonably specific detail.  See Judicial Watch, 402 F.Supp.2d at 245 (citing Summers, 140 F.3d at 1080 and Vaughn, 484 F.2d 820).  If even this level of disclosure would pose a risk to national security, an in camera review of these documents would be appropriate.  5 U.S.C. sec. 552(a)(4)(B); see Pub. Citizen, Inc. v. Dep't of State, 100 F. Supp. 2d 10, 27-28 (D.D.C. 2000) (aff'd in part, rev'd in part, 276 F.3d 634 (D.C. Cir. 2002); Pub. Educ. Ctr., Inc. v. DOD, 905 F. Supp. 19, 22 (D.D.C. 1995).  PFAWF's opposition is explained below.

### A.    Exemption One Does Not Necessarily Apply to Legal Determinations in their Entirety

Exemption One protects from disclosure information that has been properly classified.  5 U.S.C. § 552(b)(1).  Executive Order 13292 identifies the categories for

proper classification of information, which include "intelligence activities (including special activities), intelligence sources or methods, or cryptology" where unauthorized disclosure "reasonably could be expected to result in damage to the national security." Exec. Order 13292, §§1.2, 1.4. To withhold information under Exemption One, the NSA must explain with "reasonably specific detail" how the information is properly classified under the Executive Order. Casey, 656 F.2d at 738.

In support of its Exemption One argument for documents under request 6, the NSA merely asserts that "these requests reveal details about the operation of the [secret surveillance program] and its strengths and vulnerabilities" and proceeds to discuss the fragile nature of signals intelligence. NSA Motion at 23. But legal determinations do not necessarily entail sources, methods, operational details, strengths, or vulnerabilities. To the extent that the NSA can segregate such sensitive facts from abstract legal authority, it must do so. 5 U.S.C. § 552; see Krikorian, 984 F.2d at 466-67 (remanding for failure to "make specific findings of segregability for each of the withheld documents"); Oglesby, 920 F.2d at 66 n.12 (noting failure of Army affidavit to specify whether any reasonably segregable portions of 483-page document were withheld pursuant to Exemption 1); see also Harper, 1995 WL 392032, at *2 (reversing part of district court order that permitted agency to withhold entire report under Exemption 1, because district court failed to make "necessary findings" on segregability).

### B.    Exemption Three Does Not Apply Categorically to Outside Legal Determinations

Exemption Three protects from disclosure matters that are specifically exempted through another statute provided said statute: (a) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

The NSA cites to three statutes under this exemption: 18 U.S.C. § 798, 50 U.S.C. § 403-1(i), and Section 6, Public Law 86-36 (50 U.S.C. § 402 note). As explained in PFAWF's motion for partial summary judgment above, two of these statutes—18 U.S.C. § 798 and 50 U.S.C. § 403-1(i)—apply only to "procedures and methods" or "sources and methods," which are not inherent in any legal determination. As with Exemption One, the NSA must segregate such details from abstract legal authority if it is possible to do so. 5 U.S.C. § 552; see Krikorian, 984 F.2d at 466-67; Oglesby, 920 F.2d at 66 n.12; see also Harper, 1995 WL 392032, at *2.

The third statute the NSA relies upon for seeking summary judgment based on Exemption Three is 50 U.S.C. § 402 note, which protects "information with respect to the activities" of the NSA. 50 U.S.C. § 402 note. Legal determinations by parties outside the NSA are not themselves activities of the NSA. To the extent that such outside determinations reveal details of NSA activities, such information must be segregated from abstract legal authority where possible. 5 U.S.C. § 552; see Krikorian, 984 F.2d at 466-67; Oglesby, 920 F.2d at 66 n.12; see also Harper, 1995 WL 392032, at *2. Moreover, according to Founding Church, the scope of

exempted "'activities' should be construed with sensitivity to the 'hazard(s) that Congress foresaw.'" 610 F.2d at 829.

### C.    Exemption Five Does Not Necessarily Exempt All Information from Outside Legal Determinations

Exemption 5 protects "[i]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5)(2002). It is therefore applicable to at least three types of privileges: deliberative process privilege, attorney-client privilege, and attorney work product. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). The NSA maintains that all three apply here. NSA Motion at 35.

### 1.    The Deliberative Process Privilege Does Not Apply to Legal Determinations

The deliberative process privilege "protects the 'decision making processes of government agencies and focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Judicial Watch Inc. v. Dep't. of the Army, No. 04-301, 2006 WL 1506552, at *3 (D.D.C. May 31, 2006) (citing Sears, Roebuck & Co., 421 U.S. at 150. The deliberative process privilege creates two requirements: the document must be predecisional, and it must be a part of the deliberative process. Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). Predecisional means it must be "antecedent to the adoption of an agency policy." Judicial Watch, Inc., 2006 WL 1506552 at *4 (citing Jordan v. Dep't of Justice, 591 F.2d 753, 774 (D.C.Cir.1978) (en banc); Access Reports v. Dep't of Justice, 926 F.2d

1192, 1194 (D.C.Cir.1991)).  To be deliberative, the communication "must be 'a direct part of the deliberative-process in that it makes recommendations or expresses opinions on legal or policy matters.'"  <u>Judicial Watch, Inc.</u>, 2006 WL 1506552 at *4 (quoting <u>Vaughn</u>, 523 F.2d at 823-24).

In <u>Judicial Watch, Inc.</u>, the District Court for the District of Columbia observed that Exemption 5 does not exempt documents supporting a decision already made.  <u>See</u> 2006 WL 1506552 at *6.  Where a document is not "prepared to assist an agency in arriving at a decision, but to communicate… and support the decision already made," courts have refused to exempt it.  <u>Id.</u>  A legal determination is just that—a determination—and is thus decisional rather than predecisional. Moreover, according to Hayden's testimony, outside legal determinations supporting the secret surveillance program emerged after the meeting establishing what he could and could not do under the program.  <u>See</u> Hearing on the Nomination of Gen. Michael Hayden.  Thus, such determinations would not have been part of the NSA's deliberative process and would not be exempt from disclosure under the deliberative process privilege.  <u>See</u> <u>Judicial Watch, Inc.</u>, 2006 WL 1506552 at *6; <u>Vaughn</u>, 523 F.2d at 823-24.

## 2. Attorney-Client Privilege Applies Only to Communications Revealing Facts Revealed in Confidence Concerning a Legal Matter for Which the Client Has Sought Professional Advice

The NSA also relies on the attorney-client privilege.  NSA Motion at 35. Attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional

advice." Mead Data Cent., Inc. v. U.S. Dep't. of the Air Force, 566 F.2d 242, 252

(D.C. Cir. 1977). "The attorney-client privilege...does not exempt a document from

disclosure simply because the communication involves the government's counsel . . .

Rather, the communication with counsel must concern a legal matter for which the

client has sought professional advice." Judicial Watch, Inc., 2006 WL at *5

(citations omitted). Thus, while this exemption may indeed apply to any documents

provided by NSA attorneys to Hayden upon his request, it need not apply to

documents provided by outside counsel at their own behest.

Furthermore, the attorney-client protection can only shield attorney advice

where the advice itself would reveal confidential information. See Tax Analysts v.

IRS, 117 F.3d 607, 618 (D.C. Cir. 1997); Mead Data Cent., Inc., 566 F.2d at 254. As

with other protected information, the NSA must segregate such details and produce

unprotected information, such as abstract legal authority, wherever possible. 5

U.S.C. § 552; see Krikorian, 984 F.2d at 466-67; Oglesby, 920 F.2d at 66 n.12; see

also Harper, 1995 WL 392032, at *2.

### 3.    The Attorney Work Product Does Not Apply to Legal Determinations Not Made in Anticipation of Litigation

Finally, the NSA relies on the attorney work product privilege. The Attorney

work product privilege protects "documents prepared in anticipation of foreseeable

litigation, even if no specific claim is contemplated," Schiller v. NLRB, 964 F.2d

1205, 1208 (D.C. Cir. 1992). Parties need not disclose documents that "can fairly be

said to have been prepared or obtained because of the prospect of litigation." In re

Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). It is hardly credible for the NSA to

allege that outside legal determinations about the program were prepared or obtained in the anticipation of foreseeable litigation years before the New York Times had disclosed the very existence of the surveillance program in December 2005.

## II.    Opposition to NSA's Motion for Summary Judgment on Request 16

PFAWF requests "any and all NSA records relating to People For the American Way Foundation or People For the American Way." Ex. 1 at 3.  PFAWF accepts the NSA's interpretation of this request as limited to those records relating to the NSA's secret surveillance program.[5]  The NSA relies upon Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1103 (D.C. Cir. 1982) in support of its "Glomar" response to "neither confirm nor deny" such records exist.  NSA Motion at 27. Gardels asserts that a Glomar response is appropriate when "to confirm or deny the existence of records...would cause harm cognizable under a FOIA exemption."  689 F.2d at 1103.  But neither FOIA Exemption One nor Exemption Three, to which the NSA cites in support of its response to request 16, apply to documents related to PFAWF.  Thus, confirming or denying the existence of such records would not cause harm cognizable under FOIA.

### A.  Confirming or denying documents related to PFAWF would not cause harm cognizable under FOIA Exemption One.

---

[5] Letter from Louis F. Giles, Director of Policy, NSA to Elliot Mincberg, PFAWF, 1, Feb. 14, 2006 (paraphrasing PFAWF's request number 16 to read "Records relating to People for the American Way Foundation or People for the American Way (which we interpret to mean as it relates to surveillance under the program)").  A copy of the letter is attached hereto as Exhibit 2.

As noted above, FOIA Exemption One protects from disclosure information that has been properly classified. 5 U.S.C. § 552(b)(1). Executive Order 13292 identifies the categories for proper classification of information, which include "intelligence activities (including special activities), intelligence sources or methods, or cryptology" where unauthorized disclosure "reasonably could be expected to result in damage to the national security." Exec. Order 13292, §§1.2, 1.4. To withhold information under Exemption One, the NSA must explain with "reasonably specific detail" how the information is properly classified under the Executive Order. Casey, 656 F.2d at 738.

There is no legally justifiable reason under Exemption One that NSA should not confirm or deny whether it is targeting People for the American Way ("PFAW") or PFAWF with its domestic warrantless wiretapping program. PFAW is a public interest organization founded by TV and movie producer Norman Lear, former Congresswoman Barbara Jordan, Father Theodore Hesburgh, former President of the University of Notre Dame, and Andrew Heiskell, former CEO of Time, Inc. in reaction to some of the demagoguery and divisiveness preached by the religious right. PFAW's stated goals are as follows:

> Our purpose is to meet the challenges of discord and fragmentation with an affirmation of "the American Way." By this, we mean pluralism, individuality, freedom of thought, expression and religion, a sense of community, and tolerance and compassion for others. People For the American Way will reach out to all Americans and affirm that in our society, the individual still matters; that there is reason to believe in the future - not to despair of it - and that we must strengthen the common cords that connect us as humans and citizens.

http://www.pfaw.org/pfaw/general/default.aspx?oid=2859.

In many respects, PFAW and PFAWF are politically at odds with the present Republican Administration. It is of great relevance to the American public as to whether the present administration is using a controversial tool of warrantless domestic wiretapping—ostensibly justified by the need to track terrorist organizations—for keeping tabs on their political foes, such as PFAW and PFAWF. If the Administration were doing so, it would be the twenty-first century equivalent to the Watergate break-in, and the public has a right to know.

In fact, if NSA were wiretapping a political adversary of the Administration, such as PFAW and PFAWF, under the auspices of antiterrorist authority, then such wiretaps would likely be illegal, and therefore not subject to protection under FOIA. An agency may never classify information in order to "conceal violations of law, inefficiency, or administrative error" or "to prevent embarrassment." Exec. Order 13292, § 1.7. If NSA were wiretapping PFAW or PFAWF, that activity would be unlikely to fall within the stated goals of the secret surveillance program. In his declaration, Joseph B. states:

> In order to intercept a communication under the [secret surveillance program], one party to the communication must be located outside the United States and there must be a reasonable basis to conclude that one party to the communication is a member of al Qaeda, affiliated with al Qaeda, or a member of an organization affiliated with al Queda.

NSA Decl. at ¶ 3. Assuming NSA has not made a determination that PFAW or PFAWF are "a member of al Qaeda, affiliated with al Qaeda, or a member of an

organization affiliated with al Queda," surveillance of these organizations would be illegal by the NSA's own terms and, thus, unprotected under Exemption One.

Moreover, in support of its nondisclosure determination, NSA relies primarily on the Declaration of Joseph B., who hypothesizes that if the NSA were to admit to any information on any individual domestic warrantless wiretaps, that ultimately would lead to a situation in which any individual for whom the NSA refused to confirm or deny such warrantless wiretapping could infer that they were being wiretapped, otherwise the NSA would have released that information. However, such an approach is the functional equivalent of killing a ant with a sledge hammer. There are literally hundreds of millions of individuals and entities that the NSA could potentially wiretap.[6]   Disclosure of whether it is wiretapping two entities out of those millions could hardly "let the cat out of the bag" as to the other hundreds of millions. Thus, the NSA has failed to show how such a disclosure "reasonably could be expected to result in damage to the national security." Exec. Order 13292, §1.2.

The NSA could use a more nuanced approach that would more than adequately take into consideration concerns for national security while at the same time fulfilling the FOIA goal maintaining an open government. See S.Rep. No. 89-813 (1965). In fact, Congress passed FOIA in part as a result of the abuses of the Nixon Administration. Under the NSA's approach, the NSA would not have to disclose that a Republican Administration was wiretapping the Democratic

---

[6]    According to the CIA, the current US population is 298,444,215. https://www.cia.gov/cia/publications/factbook/fields/2119.html.  NSA undoubtedly has the technical know-how to wiretap most of those people.

National Committee ("DNC") headquarters without a warrant. That could not be what the lawmakers that enacted FOIA intended. Here PFAW and PFAWF are more akin to the DNC than a terrorist entity, or even an average citizen. Concealing the requested information actually risks damage to the national security by providing precisely the kind of safe haven for illegal activity that the Executive Order forbids. See Exec. Order 13292, § 1.7. As such, the Court should require the NSA to disclose whether it was wiretapping PFAW or PFAWF without a warrant.

### B. Confirming or denying documents related to PFAWF would not cause harm cognizable under FOIA Exemption Three.

Exemption Three protects from disclosure matters that are specifically exempted through another statute provided said statute: (a) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). The NSA cites to three statutes under this exemption as a basis to its Glomar response: 18 U.S.C. § 798, 50 U.S.C. § 403-1(i), and 50 U.S.C. § 402 note. NSA Motion at 29. None of these statutes justifies the NSA's refusal to confirm or deny whether PFAWF or PFAW have been subject to the secret surveillance program.

As explained in PFAWF's motion for partial summary judgment above, two of these statutes—18 U.S.C. § 798, 50 U.S.C. § 403-1(i)—apply only to "procedures and methods" or "sources and methods," which are not inherent in any confirmation or denial of documents relating to PFAWF or PFAW under the secret surveillance program. The NSA also argues that acknowledging the existence or non-existence

31

of a warrantless wiretap on PFAW or PFAWF "would reveal NSA's organization, functions and activities," which are protected from disclosure by 50 U.S.C. § 402 note. NSA Motion at 29; NSA Decl. at ¶ 29.  This is ludicrous.  NSA has already admitted the existence of the program and the fact that NSA has the technical know-how to wiretap PFAW or PFAWF could hardly be deemed a state secret.  As noted above, Founding Church asserts that "'activities' should be construed with sensitivity to the 'hazard(s) that Congress foresaw.'"  610 F.2d at 829.

In Hayden, two plaintiffs requested from the NSA all materials pertaining to them that were in the NSA's possession.  Hayden v. National Security Agency/Central Security Service, 608 F.2d 1381, 1383 (D.C. Cir. 1979).  In that case, not only did the NSA reveal the existence of documents relating to the plaintiffs, but Judge Corcoran of this Court required the agency to disclose the number of documents and pages being withheld.  Id.; Hayden, 452 F.Supp. at 252-53.  The NSA has failed to explain why an even more modest result should not prevail here. Moreover, unless the NSA has improperly targeted PFAWF or PFAW, confirming or denying records on those organizations related to the secret surveillance program would, at most, reveal that the NSA is following its own stated policy.  If the NSA believes otherwise, FOIA requires that the NSA explain itself in "reasonably specific detail."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C.Cir. 1981). Once again, it has failed to do so.

## Conclusion

For the reasons stated herein, PFAWF is entitled to summary judgment with respect to requests 2-4 and NSA is not entitled to summary judgment with respect to requests 6 and 16.

Respectfully submitted,

_____/s/_____

MICHAEL L. MARTINEZ
DC Bar No. 347310
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20036
(202) 624-2945 (telephone)
(202) 628-5116 (facsimile)
Email: mmartinez@crowell.com

Elliot M. Mincberg
People For the American Way
Foundation
200 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)
Email: emincberg@pfaw.org

DEBBIE LIU
People For the American Way
Foundation

JOHN MCCARTHY
Crowell & Moring, LLP

CHRISTOPHER GAGNE
Crowell & Moring, LLP

CHRISTOPHER CALSYN
Crowell & Moring, LLP

Dated: July 24, 2006.

EXHIBIT 1

**VIA FACSIMILE TRANSMISSION AND VIA FIRST-CLASS MAIL DELIVERY**

December 29, 2005

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax to: 443-479-3612

U.S. Department of Defense
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155
Fax to: 703-696-4506

FOIA/PA Mail Referral Unit
Justice Management Division
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0001
Fax to: 202-616-6695

Chief, FOIA/PA Section
Federal Bureau of Investigations
J. Edgar Hoover Building
935 Pennsylvania Ave.
Washington, DC 20530-0015
Fax to: 202-324-3752

Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505
Fax to: 703-613-3007

RE:   **FREEDOM OF INFORMATION ACT REQUEST &**
      **REQUEST FOR EXPEDITED PROCESSING**

Dear Freedom of Information Officers:

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") submitted on behalf of People For the American Way Foundation ("PFAWF").

A.   Records Sought

We seek disclosure of the following agency records:

1.   Any and all documents relating to an individual or organization that has been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Executive Order signed by President Bush in 2002 authorizing the NSA to conduct warrantless wiretaps domestically (hereinafter "the Order"), including, without limitation, documents authorizing the initiation of such electronic surveillance.

2.   Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to the Order since the date of the Order up to the date of this request.

3.   Any and all documents that refer, reflect or relate to the total number of individuals who have been the subject of warrantless electronic surveillance by

the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.

4. Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes successive wiretaps conducted on the same individual.

5. Any and all documents relating to an attempt by the NSA to conduct warrantless electronic surveillance on an individual within the United States pursuant to the Order that failed to satisfy any set of predetermined conditions for warrantless electronic surveillance as established by any policy, procedure, notice, directive or practice.

6. Any and all documents relating to any audit or review of the NSA's program to conduct domestic warrantless electronic surveillance on individuals within the United States (hereinafter "the NSA program") pursuant to the Order since its execution, whether such audit or review was conducted internally by the NSA or externally, and whether such review or audit was conducted for the benefit of congressional or executive branch use.

7. Any and all documents that refer, reflect or relate to any concern, objection or question raised within the NSA about the NSA program conducted pursuant to the Order.

8. Any and all documents that reflect, refer or relate to communications with members of the United States Senate or House of Representatives about the NSA program to conduct domestic warrantless electronic surveillance, including, without limitation, copies of correspondence from or to members of Congress with any government person or agency about the NSA program.

9. Any and all documents that reflect, refer or relate to the names of any member of the United States Senate or House of Representatives who has been briefed or informed about the program.

10. Any and all documents relating to the dozen or more briefings to Congress about the NSA program referenced by Vice President Dick Cheney in his interview with ABC News "Nightline" on December 18, 2005, including without limitation any documents prepared for use in such briefings and any documents that reflect the attendees and dates of any such briefings. See Hope Yen, *Lawmakers Call for Investigation into Domestic Spying Program,* The Associated Press, Dec. 19, 2005, and attached hereto.

11. Any document that contains or relates to any "checklist" or list created either by the Department of Justice, the Federal Bureau of Investigation or the NSA for use in determining whether probable cause or any justification exists for the initiation of a warrantless electronic surveillance of an individual in the United States by the NSA pursuant to the Order, including, without limitation, copies of initial drafts of such a "checklist," any subsequent revisions to a checklist, and any checklists relating to a specific individual that was considered as a subject of electronic surveillance under the NSA program whether or not such individual was ever in fact subjected to it.

12. Any and all records relating to the NSA's electronic surveillance of Ohio trucker Iyman Fairs, who was reported as having been a subject of the NSA program and who was allegedly involved in a plot to destroy the Brooklyn Bridge, including without limitation any checklist or approval of the NSA's electronic surveillance of him. *See* James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts,* New York Times, Dec. 16, 2005, and attached hereto.

2

13.     Any and all records relating to a warrantless electronic wiretap conducted under the NSA program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including without limitation any checklist or approval of such electronic surveillance. *Id.*

14.     All records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for or for their use during their press briefing on December 19, 2005 about the NSA program and the Order.

15.     All records provided to or created for the White House in preparation or for its use during the news conference held by President Bush on December 19, 2005 about the NSA program and the Order.

16.     Any and all NSA records relating to People For the American Way Foundation or People For the American Way.

As to Request Nos. 2 – 4, PFAWF is willing to accept a full list of the number of domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under authority granted by the Order, with the names of the targeted individuals or organizations redacted. Alternatively, PFAWF is also willing to accept redacted copies of the actual records responsive to Nos. 2-4. Because our primary interest is determining the total number of times the NSA has conducted electronic surveillance on individuals within the United States pursuant to the Order without having first obtained a court-approved warrant, and the number of persons subjected to that surveillance, either of these options are acceptable alternative responses to Request Nos. 2-4. This basic information on how many people have been wiretapped pursuant to the Order, and how many times such surveillance has occurred, should clearly be disclosed to the American people.

      B.     <u>Request for Expedited Processing</u>

      PFAWF requests that you provide this information as soon as possible as it meets the criteria for expedited processing under the FOIA.

      First, the requesting organization is primarily engaged in disseminating information to the public, that is, it is an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes them to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). PFAWF publishes news releases, media briefings, reports, and other materials that are disseminated to the public for its use in participating in the public discourse on important civil and constitutional rights. PFAWF's materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its research department. Requester also disseminates information through its Web site (www.pfaw.org). The Web site addresses civil liberties issues in depth, provides features on civil liberties issues in the news, and contains hundreds of documents that relate to the issues on which PFAWF is focused.

      Second, records as to the NSA's electronic surveillance of individuals within the United States without a court approved warrant in violation of the Fourth Amendment is information that is "urgently needed to inform the public concerning some actual or alleged government activity." PFAWF is making this request specifically to further the public's understanding of the government's secret activities in its war on terrorism, a matter that is particularly pertinent in light of the Supreme Court's decisions in 2004 which made clear that there limits to the President's powers even during times akin to war, particularly when they infringe on the fundamental rights of American citizens.

Third, the NSA program of conducting secret electronic surveillance of Americans within the United States "is of widespread and exceptional media interest and the information sought involves possible questions about the government's integrity which affect public confidence." The exceptional interest in this matter is incontrovertible as prominent members of both parties have called for a congressional investigation into the NSA program since the New York Times first shed light of its existence last week. As public officials and the American people have made clear, the protection of civil liberties for citizens and non-citizens alike is one of this country's most fundamental promises. A small selection of news articles that reflect the strong public interest in the materials PFAWF seeks in our request is attached hereto.

Finally, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions as to its credibility and integrity. For over three years, the administration has authorized the NSA to conduct secret wiretaps of Americans despite its repeated assertions that it has been conducting its war on terrorism within the confines of the law. This newly discovered program is in direct contradiction to President Bush's own words in response to concerns about the erosion of civil liberties caused by the PATRIOT Act when he said: "[A]ny time you hear the United States government talking about wiretap, it requires - a wiretap requires a court order. Nothing has changed, by the way. When we're talking about chasing down terrorists, we're talking about getting a court order before we do so." *See* Remarks by the President in a Conversation on the USA Patriot Act on April 20, 2004 attached hereto. This newly discovered secret activity by the NSA raised serious questions that should be promptly answered about how many times the government has conducted warrantless wiretaps on individuals within the United States and who was aware of the program. The concern that the government has consistently sought to prevent the public and the media from monitoring its post 9/11 activities in any meaningful way seriously undermines public confidence in the government.

In sum, this request is about federal government activity, it concerns a matter of current exigency to the American public, and the consequences of delaying a response would compromise a significant recognized interest. *See Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001). This request for expedited processing should thus be granted and PFAWF looks forward to your reply within 20 business days, as the statute requires under Section 552(a)(6)(A)(I).

I certify that my statements concerning the need for expedited review are true and correct to the best of my knowledge and belief.

C.    Request for Fee Waiver

We request a waiver of the fees involved in the processing of this request for two reasons. First, PFAWF should be entitled to the exemption afforded news media and educational institutions because its mission is consistent with both types of organizations. As described above, PFAWF is primarily engaged in disseminating information to the public. It should, therefore, be afforded the same exemption granted educational and news organizations.

Second, PFAWF should be entitled to the waiver of any fees because the release of these records is indisputably in the public interest. As described above, the government's disturbing secrecy policy surrounding its anti-terrorism tactics raises serious questions that deserve an answer. The authorization and conduct of secret warrantless wiretaps of Americans directly violates one of the basic tenets of this country's constitutional guarantees and the public is entitled to know how many times and what manner the government has been engaging in such activity. These records cannot be obtained from other sources. PFAWF has expertise in

reviewing these types of records because we have, for many years, been involved in disseminating information about the government's conduct of the war on terrorism to the public - we have 750,000 members and regularly transmit information of public interest to our members and news media. Given the public's interest in the documents requested and PFAWF's expertise in reviewing and analyzing such documents, and PFAWF's ability to transmit information about these types of documents to a wide audience, PFAWF seeks a waiver of any fees associated with this request.

Thank you for your prompt attention to this matter. Please respond to Elliot Mincberg, General Counsel, People For the American Way Foundation, 2000 M Street, NW, Suite 400, Washington, DC 20036, (202) 467-4999.

Sincerely,

Elliot Mincberg, General Counsel
People For the American Way Foundation

Enclosures

EXHIBIT 2



**NATIONAL SECURITY AGENCY**
**CENTRAL SECURITY SERVICE**
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case: 47925
14 February 2006

Mr. Elliot Mincberg
People for the American Way Foundation
2000 M Street, NW
Suite 400
Washington, DC 20036

Dear Mr. Mincberg:

This responds to your Freedom of Information Act (FOIA) request submitted via facsimile on 29 December 2005, which was received by this office on 30 December 2005, for documents concerning the National Security Agency's collection program approved by President Bush (hereinafter referred to as "the program"). Specifically you requested the following items as they relate to the above (items below are paraphrased for ease of reference only; request letter language was used for processing the request).

1. All documents relating to individuals or organizations who were the subject of the program.

2. Documents reflecting the total number of individuals subject to surveillance under the program from the program's inception to the present.

3. Documents reflecting the total number of individuals subject to surveillance under the program from mid-2004 to the present.

4. Documents that reflect the total number of instances of surveillance under the program.

5. Documents relating to any attempts by NSA to conduct surveillance under the program on an individual in the U.S. that failed to satisfy any set of predetermined conditions for surveillance under the program.

6. Documents relating to any audit or review of the program, whether conducted internally or externally.

7. Documents that reflect any concern, objection or question raised within NSA about the program.

FOIA Case: 47925

8. Communications with members of Congress about the program.

9. Documents naming the members of Congress who have been briefed on the program.

10. Documents relating to Vice President Dick Cheney's briefings to Congress about the program.

11. Any "checklist" or list created by the Department of Justice, Federal Bureau of Investigation or NSA for use in determining cause or justification for surveillance of individuals in the U.S. under the program.

12. NSA's surveillance of Ohio trucker Lyman Fairs.

13. Records collected under the program that uncovered an alleged al Qaeda plot involving fertilizer bomb attacks on British pubs and train stations, including any checklist or approval of such collection.

14. Records provided to or created for Attorney General Alberto Gonzales or General Michael Hayden in preparation for a 19 December 2005 press briefing about the program.

15. Records provided to or created for the White House in preparation for a new conference held by President Bush on 19 December 2005 about the program.

16. Records relating to People for the American Way Foundation or People for the American Way (which we interpret to mean as it relates to surveillance under the program).

Your request has been assigned Case Number 47925. For purposes of this request and based on the information you provided in your letter, you are considered a representative of the media. Unless you qualify for a fee waiver or reduction, you must pay for duplication in excess of the first 100 pages. There are no assessable fees for this request; therefore, we did not address your request for a fee waiver.

As you know, the President of the United States "authorized the National Security Agency [(NSA)], consistent with U.S. law and the Constitution, to intercept the international communications of people with known links to al Qaeda and related terrorist organizations." The President also noted that, "[t]his is a highly classified program that is crucial to our national security."

FOIA Case: 47925

Rest assured that safeguards are in place to protect the civil liberties of U.S. citizens. However, because of the highly classified nature of the program, we can neither confirm nor deny the existence of records responsive to the items numbered 12, 13, and 16 in your request. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended. Thus, the items numbered 12, 13, and 16 in your request are denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute. Thus, the items numbered 12, 13, and 16 in your request are also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Regarding the items numbered 5, 14, and 15 in your request, we have determined that we do not have records responsive to those portions of your request.

Documents responsive to the item numbered 8 in your request are enclosed. The names of NSA/CSS employees have been deleted from these enclosures. This information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statute applicable in this case is Section 6, Public Law 86-36 (50 U.S. Code 402 note).

In addition, information regarding other individuals has been deleted from the enclosures in accordance with 5 U.S.C. 552 (b)(6). This exemption protects from disclosure information which would constitute a clearly unwarranted invasion of personal privacy. In balancing the public interest for the information you request against the privacy interests involved, we have determined that the privacy interests sufficiently satisfy the requirements for the application of the (b)(6) exemption.

Information responsive to the items numbered 1-4, 6-7, 9-11 of your request has been withheld in its entirety. The information has been found to be currently and properly classified in accordance with Executive Order 12958, as amended. The information meets the criteria for classification as set forth in Subparagraphs (c) and (g) of Section 1.4 and remains classified TOP SECRET as provided in Section 1.2 of Executive Order 12958, as amended. The

FOIA Case:  47925

information is classified because its disclosure could reasonably be expected to cause exceptionally grave damage to the national security. Because the information currently and properly classified, it is exempt from disclosure pursuant to the first exemption of the FOIA (5 U.S.C. Section 552(b)(1)).

In addition, this Agency is authorized by various statutes to protect certain information concerning its activities. Accordingly, this information is exempt from disclosure pursuant to the third exemption of the FOIA which provides for the withholding of information specifically protected from disclosure by statute. The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

Finally, in addition to being exempt under exemptions 1 and 3, the information responsive to the items numbered 6, 7, 9, and 11 is also exempt from disclosure pursuant to the fifth exemption of the FOIA. This exemption applies to inter-agency or intra-agency memoranda or letters which would not be available by law to a party in litigation with the agency, protecting information that is normally privileged in the civil discovery context, such as information that is part of a predecisional deliberative process, and/or attorney-client privileged information, and/or attorney work product.

Since the items numbered 12, 13, and 16 of your request are denied; we did not locate records responsive to the items numbered 5, 14, and 15; and because information responsive to the items numbered 1-4, 6-8, and 9-11 is being withheld either in part or in its entirety, you are hereby advised of this Agency's appeal procedures. Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority. The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter. The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DC34), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD  20755-6248. The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted. The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

FOIA Case:  47925

Finally, we have enclosed copies of two DIRGRAMs relating to the program that have been released to other requesters.

Sincerely,

LOUIS F. GILES
Director of Policy

Encls:
a/s

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEOPLE FOR THE AMERICAN     )
WAY FOUNDATION     )
     )
     Plaintiff,     )
     )
     v.     )     Civil Action No. 06-00206
     )
NATIONAL SECURITY     )
AGENCY/CENTRAL SECURITY     )
SERVICE     )
     )
     Defendant.     )
     )

## [PROPOSED] ORDER

Upon consideration of the cross motions for summary judgment and the

entire record in this matter, it is by the Court this __ day of _____, 2006, hereby

ORDERED that the Plaintiffs' motion be and hereby is Granted and the

Defendant's motion be and hereby is Denied.


                                             _____
                                           Ellen S. Huvelle
                                         United States District Judge

ELLIOT M. MINCBERG
People For the American Way
Foundation
200 M Street, Suite 400
Washington, DC 20036
(202) 467-4999 (telephone)
(202) 293-2672 (facsimile)
Email: emincberg@pfaw.org

DEBBIE LIU
People For the American Way
Foundation

MICHAEL L. MARTINEZ
Crowell & Moring, LLP
1001 Pennsylvania Ave., NW
Washington, DC 20036
(202) 624-2945 (telephone)
(202) 628-5116 (facsimile)
Email: mmartinez@crowell.com

JOHN MCCARTHY
Crowell & Moring, LLP

CHRISTOPHER GAGNE
Crowell & Moring, LLP

CHRISTOPHER CALSYN
Crowell & Moring, LLP

PETER D. KEISLER
Assistant Attorney General, Civil
Division

KENNETH J. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs
Branch

RUPA BHATTACHARYYA
Senior Trial Counsel
Federal Programs Branch, Civil
Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave.,
NW
Washington, DC 20044
(202) 514-3146 (telephone)
(202) 318-7593 (facsimile)
Email: rupa.bhattacharyya@usdoj.gov