IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEOPLE FOR THE AMERICAN WAY FOUNDATION, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Civil Action No. 06-00206 (ESH) |
| v. | ) <br> ) |
| NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

**SUPPLEMENTAL DECLARATION OF LOUIS F. GILES**

I, Louis F. Giles, hereby declare and state:

1.  I am supplementing my declaration dated May 9, 2006, which informed the Court that all records responsive to Plaintiff's Freedom of Information Act ("FOIA") request that were withheld by the National Security Agency ("NSA") were properly exempt from release under the FOIA as they contained information that was currently and properly classified and also protected from disclosure by various statutes. This supplemental declaration specifically addresses Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Opposition") on Request No. 6, wherein Plaintiff sought records on any audit or review of the Terrorist Surveillance Program (hereinafter "TSP"), whether conducted internally or externally, and Request No.16, wherein Plaintiff sought surveillance records on itself.

2.  In its Opposition, Plaintiff for the first time asserts that it considers Request No. 6 to encompass internal and external legal memoranda and opinions on the Terrorist Surveillance Program ("TSP"). NSA, based on a plain reading of Request No. 6

and given the specificity of Plaintiff's other fifteen (15) requests, did not interpret Plaintiff's Request No. 6 as seeking legal memoranda and opinions on the TSP. Rather, NSA interpreted Plaintiff's FOIA request as a request for operational records such as an NSA Inspector General audit or report on the TSP. These were the documents that NSA searched for and processed in response to Plaintiff's request as described in my earlier declaration and in the Declaration of Joseph B.

3. Plaintiff, if it wanted legal memoranda and opinions on the TSP, could have easily indicated such in its Request No. 6 or in an additional request. Other requesters have sought records on the TSP, and they have made distinctions between audits and reviews and legal memoranda and opinions. <u>Attachment A</u>. As such, NSA's interpretation of Plaintiff's Request No. 6 was reasonable, especially in light of the plain language used by the Plaintiff in its FOIA request.

4. With respect to Plaintiff's Request No. 16, Plaintiff opposes the Agency's application of FOIA Exemptions 1 and 3 in refusing to acknowledge the existence or non-existence of surveillance records on Plaintiff. It should be noted that NSA, from January through June 2006, has received 835 requests from individuals and organizations seeking surveillance records on themselves. In all of these cases, NSA has neither confirmed nor denied the existence of surveillance records as to do otherwise would result in the disclosure of intelligence information, sources and methods, and would undermine surveillance activities in general. NSA cannot confirm the non-existence of surveillance records for requester after requester and then issue a Glomar response (neither confirm nor deny) in cases where requesters were in fact targets. Any further

elaboration on Plaintiff's Request No. 16 would reveal information that is currently and properly classified and protected from disclosure by various statutes.

Executed, this ___1st___ day of September 2006, pursuant to 28 U.S.C. § 1746.

                                                  LOUIS F. GILES
                                                  Director of Policy
                                                  National Security Agency

# ATTACHMENT A

ELECTRONIC PRIVACY INFORMATION CENTER

**epic.org**

12/22/05

December 16, 2005

VIA FIRST CLASS MAIL AND FACSIMILE — (443) 479-3612

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248

1718 Connecticut Ave NW
Suite 200
Washington DC 20009
USA
+1 202 483 1140 [tel]
+1 202 483 1248 [fax]
www.epic.org

RE:   Freedom of Information Act Request and Request for Expedited Processing

Dear FOIA/PA Officer:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Agency ("NSA") on behalf of the Electronic Privacy Information Center ("EPIC").

We are seeking the following agency records (including but not limited to electronic records) from September 11, 2001 to the present:

1. any records concerning a presidential order or directive authorizing the National Security Agency or any other component of the intelligence community to conduct domestic surveillance without the prior authorization of the Foreign Intelligence Surveillance Court. The existence of such an order was reported in an article entitled *Bush Lets U.S. Spy on Callers Without Courts* that appeared on the front page of the New York Times this morning (see attached article).

2. All legal or policy memoranda, opinions, statements, guidance, and communications concerning the NSA's collection of intelligence information about American citizens.

3. All legal or policy memoranda, opinions, statements, guidance, and communications concerning the NSA's collection of intelligence information within the United States.

Request for Expedited Processing

This request warrants expedited processing because it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged Federal government activity," and the request is made by "a person primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). The federal government

activity at issue here —warrantless domestic surveillance by the NSA — raises serious legal questions about the government's intelligence activity and has received considerable media attention in the past few hours.

The New York Times reported on its front page this morning:

> Months after the Sept. 11 attacks, President Bush secretly authorized the National Security Agency to eavesdrop on Americans and others inside the United States to search for evidence of terrorist activity without the court-approved warrants ordinarily required for domestic spying, according to government officials.
>
> Under a presidential order signed in 2002, the intelligence agency has monitored the international telephone calls and international e-mail messages of hundreds, perhaps thousands, of people inside the United States without warrants over the past three years in an effort to track possible "dirty numbers" linked to Al Qaeda, the officials said.

James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, NY Times, Dec. 15, 2005 at A1.

There is unquestionably an urgency to inform the public about this matter because it has raised serious questions about the constitutionality of the NSA's domestic surveillance. According to the New York Times article, "some officials familiar with the continuing operation have questioned whether the surveillance has stretched, if not crossed, constitutional limits on legal searches." The article also states that "nearly a dozen current and former officials, who were granted anonymity because of the classified nature of the program, discussed it with reporters for The New York Times because of their concerns about the operation's legality and oversight." Furthermore, the Washington Post reported, "Congressional sources familiar with limited aspects of the program would not discuss any classified details but made it clear there were serious questions about the legality of the NSA actions." Dan Eggen, *Bush Authorized Domestic Spying*, Washington Post, Dec. 16, 2005, at A01 (attached hereto).

In addition, this subject has unquestionably been the subject of exceptional media interest. In addition to the New York Times and Washington Post, hundreds of local and national media organizations reported on this matter throughout the United States this morning. In fact, a Google News search identified approximately 316 news stories on the NSA's domestic surveillance (Google News results attached hereto).[1]

The purpose of EPIC's request is to obtain information directly relevant to the NSA's domestic surveillance. The records requested involve the manner and extent to which

---

[1] Due to the NSA's twenty-page restriction on FOIA requests received by facsimile, EPIC is attaching the first few pages of Google News search results here, and will provide full search results by mail.

2

the NSA is involved in such activity and clearly meet the standard for expedited processing.

Furthermore, at least one congressional committee will be investigating the NSA's domestic surveillance work in the coming days. Senator Arlen Specter, Chairman of the Senate Judiciary Committee, said that the surveillance activities at issue here are "wrong, clearly and categorically wrong . . . This will be a matter for oversight by the Judiciary committee as soon as we can get to it in the new year — a very, very high priority item.'" *Specter Says Senate to Probe Report U.S. Broke Law on Spying,* *Bloomberg*.com, Dec. 16, 2005 (attached hereto). It is critical for Congress and the public to have as much information as possible about the NSA's domestic surveillance to fully consider and determine its propriety.

Further, as I explain below in support of our request for "news media" treatment, EPIC is "primarily engaged in disseminating information."

Request for "News Media" Fee Status

EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues. The site also features scanned images of documents EPIC obtains under the FOIA. Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule). It has been published continuously since 1996, and an archive of past issues is available at our Web site. Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. A list of EPIC publications is available at our Web site.

For the foregoing reasons, EPIC clearly fits the definition of "representative of the news media" contained in the FOIA. Indeed, the U.S. District Court for the District of Columbia has specifically held that EPIC is "primarily engaged in disseminating information" for the purposes of expedited processing, *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004), and is a "representative of the news media" for fee waiver purposes, *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested records with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," as described above, any duplication fees should be waived.

Thank you for your consideration of this request. As the FOIA provides, I will anticipate your determination on our request for expedited processing within ten (10)

3

calendar days. Should you have any questions about this request, please feel free to call me at (202) 483-1140 ext. 112.

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge.

Sincerely,

Marcia Hofmann
Director, Open Government Project

Enclosures

4

ANN BEESON
ASSOCIATE LEGAL DIRECTOR



12/22/05

December 20, 2005

National Security Agency
Attn: FOIA/PA Office (DC34)
9800 Savage Road, Suite 6248
Ft. George G. Mead, MD 20755-6248

Re: **REQUEST UNDER FREEDOM OF INFORMATION ACT /**
**Expedited Processing Requested**

Attention:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212 549.2601
F/212 549.2651
ABEESON@ACLU.ORG
WWW.ACLU.ORG

This letter constitutes a request by the American Civil Liberties Union and the American Civil Liberties Union Foundation ("ACLU") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Department of Defense implementing regulations, 32 C.F.R. § 286.1 *et seq.*[1]

### I. The Request for Information

The ACLU seeks disclosure of any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance[2] and/or warrantless physical searches in the United States, created from September 11, 2001 to the present.[3]

In addition, the ACLU seeks disclosure of any record(s),[4] document(s), file(s), communications, memorandum(a), order(s), agreement(s) and/or instruction(s), created from September 11, 2001 to the present, about:

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues. The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] The term "electronic surveillance" includes but is not limited to warrantless acquisition of the contents of any wire or radio communication by an electronic, mechanical, or other surveillance device, and the warrantless installation or use of an electronic, mechanical, or other surveillance device for monitoring to acquire information, other than from a wire or radio communication.

[3] This request does not include surveillance authorized by 50 U.S.C. §§ 1802 or 1822(a).

[4] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

1

1. any presidential order(s) authorizing the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

2. the policies, procedures and/or practices of the NSA:

    a. for identifying individuals, organizations or entities to subject to warrantless electronic surveillance and/or warrantless physical searches in the United States, including but not limited to any "checklist to follow in deciding whether probable cause existed to start monitoring someone's communications,"[5] or a requirement that there be a "clear link" between terrorist organizations and individuals subject to such surveillance;[6]

    b. for gathering information through warrantless electronic surveillance and/or warrantless physical searches in the United States;

    c. governing the maintenance and/or storage of information described in paragraph 2(b) above;

    d. for analyzing and using information described in paragraph 2(b) above;

    e. for sharing information described in paragraph 2(b) above with other government agencies;

    f. for sharing information described in paragraph 2(b) above to be "used as the basis for F.I.S.A. warrant requests from the Justice Department,"[7] or any other form of warrant;

    g. for cross referencing information described in paragraph 2(b) above with information about other individuals, organizations, or groups;

    h. for cross-referencing information described in paragraph 2(b) above with information in any database;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[5] James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1, A16.
[6] Transcript, President Bush's Address, Dec. 17, 2005, available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html
[7] Risen and Lichtblau, Dec. 16., at A16.

2

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

    i. to suspend and/or terminate warrantless electronic surveillance and/or physical searches in the United States by the NSA;

    j. governing the destruction of information described in paragraph 2(b) above;

    k. for protecting the privacy of individuals who are subject to warrantless electronic surveillance and/or warrantless physical searches in the United States;

    l. for consulting with, or obtaining approval from, the Justice Department or other departments, agencies, and/or executive branch officials before engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;

    m. any minimization procedure, as that term is defined in 50 U.S.C.§ 1801(h), for information described in paragraph 2(b) above;

3. the name of other government agencies with whom the information described in part 2(b) above is shared;

4. the date on which:

    a. President Bush signed an order permitting the NSA to engage in warrantless electronic surveillance and/or warrantless physical searches in the United States;

    b. the NSA began engaging in warrantless electronic surveillance and/or warrantless physical searches in the United States;[8]

5. the constitutionality, legality, and/or propriety of warrantless electronic surveillance and/or warrantless physical searches in the United States;

6. any Justice Deparment "legal reviews of the program and its legal rationale."[9]

---

[8] It is unclear when the NSA began its domestic surveillance program and when the President provided written authorization for it to do so. On December 18, 2005, the New York Times reported that the NSA "first began to conduct warrantless surveillance on telephone calls and e-mail messages between the United States and Afghanistan months before President Bush officially authorized a broader version of the agency's special domestic collection program." Eric Lichtblau and James Risen, *Eavesdropping Effort Began Soon After Sept. 11 Attacks*, New York Times, Dec. 18, 2005.

3

7. any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

8. any investigation, inquiry, or disciplinary proceeding initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or practice related to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA;

9. any Department of Justice audit of any NSA program carrying out warrantless electronic surveillance and/or warrantless physical searches in the United States;[10]

10. the number of:

    a. individuals who have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

    b. individuals who have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

    c. organizations or entities that have been subjected to warrantless electronic surveillance in the United States by the NSA since September 11, 2001;

    d. organizations or entities that have been subjected to warrantless physical searches in the United States by the NSA since September 11, 2001;

11. the average and maximum[11] number of:

    a. individuals who have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

---

[9] Eric Lichtblau and David E. Sanger, *Administration Cites War Vote in Spying Case*, New York Times, Dec. 20, 2005.

[10] Risen and Lichtblau, Dec. 16, at A16 (describing such an audit as taking place on or after 2004).

[11] The New York Times reports that "officials familiar with [the program] say the N.S.A. eavesdrops without warrants on up to 500 people in the United States at any time." Risen and Lichtblau, Dec. 16, at A16.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

4

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

      b. individuals who have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

      c. organizations or entities that have been the target of warrantless electronic surveillance in the United States by the NSA at any one time since September 11, 2001;

      d. organizations or entities that have been the target of warrantless physical searches in the United States by the NSA at any one time since September 11, 2001;

12. the number of individuals who have been subjected to warrantless electronic surveillance and/or warrantless physical searches in the United States by the NSA who are United States citizens, lawful permanent residents, recipients of non-immigrant visas, lawful visitors without visas, and undocumented immigrants, respectively;

13. the types of communications that have been subjected to warrantless electronic surveillance by the NSA, including but not limited to whether such communications were carried out via telephone, email, instant messaging, chat, Voice Over IP, other Internet-based communications technologies, or in-person conversation;

14. elements of the NSA's warrantless surveillance program in the United States that were suspended or revamped after, "[i]n mid-2004, concerns about the program [were] expressed by national security officials, government lawyers and a judge";[12]

15. concerns expressed by national security officials, government lawyers, judges and others regarding the NSA's warrantless surveillance program;[13]

16. the number of instances in which the Attorney General has authorized warrantless electronic surveillance and/or phsycial searches under 50 U.S.C. §§ 1802 or 1822(a), and copies of each certification; and

17. President Bush's periodic reauthorization of the NSA's warrantless surveillance in the United States, including but not limited to the frequency with which the President reviews the surveillance program, the exact number of times the President has reauthorized the program,

---

[12] Risen and Lichtblau, Dec. 16, at A16.
[13] *Id.*

5

the basis and/or criteria for continued authorization of the program, and other government officials, departments, and/or agencies involved in the review process.[14]

## II. Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 32 C.F.R. § 286.28(e) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." National Security Archive v. Department of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[14] On December 17, 2005, President Bush said:
> The activities I authorized are reviewed approximately every 45 days. Each review is based on a fresh intelligence assessment of terrorist threats to the continuity of our government and the threat of catastrophic damage to our homeland. During each assessment, previous activities under the authorization are reviewed. The review includes approval by our nation's top legal officials, including the attorney general and the counsel to the president. I have reauthorized this program more than 30 times since the Sept. 11 attacks and I intend to do so for as long as our nation faces a continuing threat from Al Qaeda and related groups.

Transcript, President Bush's Address, December 17, 2005, available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html. *See also* David E. Sanger, *In Address, Bush Says He Ordered Domestic Spying*, New York Times, December 18, 2005.

6

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. See, e.g., www.aclu.org/patriot_foia; www.aclu.org/torturefoia; http://www.aclu.org/spyfiles. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." Cf. Electronic Privacy Information Ctr. v. Department of Defense, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." See Judicial Watch Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

### III. Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Disclosure of the requested information is in the public interest. This request will further public understanding of government conduct; specifically, the NSA's warrantless electronic surveillance and/or physical searches in the United States. This type of government activity concretely affects many individuals and implicates basic privacy, free speech, and associational rights protected by the Constitution.

Moreover, disclosure of the requested information will aid public understanding of the implications of the President's decision to permit the NSA to engaging in warrantless electronic surveillance and/or physical searches in the United States and, consequently, to circumvent the judicial oversight required by the Foreign Intelligence Surveillance Act of 1978.[15] Congress passed this Act in response to scandalous revelations about widespread political surveillance by the FBI under the leadership of J. Edgar Hoover. Following those revelations, Congress convened hearings and established a commission to investigate the government's abuses and explore how best to prevent future excesses. The hearings, chaired by Idaho Senator Frank Church, revealed that the government had infiltrated civil rights and peace groups, had burglarized political groups to gain information about their members and activities, and had "swept in vast amounts of information about the personal lives, views, and associations of American citizens."[16] Understanding the current scope of the NSA's warrantless surveillance is, therefore, crucial to the public's interest in understanding the legality and consequences of the President's order and the NSA's current surveillance practices.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section II, the ACLU is well-situated to disseminate information it gains from this request to the general public and to groups that protect constitutional rights. Because the ACLU meets the test for a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[17]

---

[15] 50 U.S.C. § 1801 *et seq.*
[16] INTELLIGENCE ACTIVITIES AND THE RIGHTS OF AMERICANS, BOOK II: FINAL REPORT OF THE SELECT COMMITTEE TO STUDY GOVERNMENTAL OPERATIONS WITH RESPECT TO INTELLIGENCE ACTIVITIES. UNITED STATES SENATE. APRIL 26, 1976. *Available at* http://www.icdc.com/~paulwolf/cointelpro/churchfinalreportIIa.htm.
[17] For example, in May 2005, the United States Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request submitted that month regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section II. As also stated in Section II, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

## IV. Expedited Processing Request

Expedited processing is warranted because there is an "urgent[] need[]" "to inform the public about an actual or alleged Federal Government activity" by organizations "primarily engaged in disseminating information." 32 CFR § 286.4(d)(3)(ii).[18] This request implicates an urgent matter of public concern; namely, the NSA's potentially extensive warrantless electronic surveillance and/or physical searches in the United States. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease and future violations are prevented.

The implementing regulations specify that "[u]rgently needed means that the information has a particular value that will be lost if not disseminated quickly." 32 CFR § 286.4(d)(3)(ii)(A). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement officials. It took less than a day for Arlen Specter, the Republican chairman of the Senate Judiciary Committee, to pledge that the Senate would hold hearings to investigate the NSA's warrantless surveillance. Jennifer Loven, *Report of NSA Spying Prompts Call for Probe*, San Francisco Chronicle, Dec. 16, 2005. That the President chose to give a rare, live radio address providing additional information about the NSA's warrantless surveillance the day after it was revealed underscores the urgency of the ACLU's request. The urgent and time sensitive nature of the request is also apparent from the widespread and sustained media coverage the NSA's warrantless domestic surveillance activities have garnered. *See, e.g.*, James Risen and Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, New York Times, Dec. 16, 2005, at A1; Maura Reynolds and Greg

---

Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

[18] The ACLU is "primarily engaged in disseminating information," as discussed in Sections II and III.

9

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Miller, *Congress Wants Answers About Spying on U.S. Citizens*, Pittsburgh Post-Gazette, Dec. 16, 2005; Steven Thomma, *Spying Could Create Backlash on Congress; Public Reaction Hinges on Identity of Targets*, San Jose Mercury News, Dec. 16, 2005; Christine Hauser, *Bush Declines to Discuss Report on Eavesdropping*, New York Times, Dec. 16, 2005; Katherine Shrader, *Lawmakers Say Reported Spy Program Shocking, Call For Investigations*, San Diego Union Tribune, Dec. 16, 2005; Caren Bohan and Thomas Ferraro, *Bush Defends Eavesdropping and Patriot Act*, ABC News, Dec. 17, 2005; Dan Eggan and Charles Lane, *On Hill, Anger and Calls for Hearing Greet News of Stateside Surveillance*, Washington Post, Dec. 17, 2005, at A1; Jennifer Loven, *Bush Defends Secret Spying in U.S.*, San Francisco Chronicle, Dec. 17, 2005; Barton Gellman and Dafna Linzer, *Pushing the Limits of Wartime Powers*, Washington Post, Dec. 18, 2005, at A1; John Diamond, *NSA's Surveillance of Citizens Echoes 1970s Controversy*, USA Today, Dec. 18, 2005; James Kuhnhenn, *Bush Defends Spying in U.S.*, San Jose Mercury News, Dec. 18, 2005; Fred Barbash and Peter Baker, *Gonzales Defends Eavesdropping Program*, Washington Post, Dec. 19, 2005; Todd J. Gillman, *Bush Assails Disclosure of Domestic Spying Program*, San Jose Mercury News, Dec. 19, 2005; David Stout, *Bush Says U.S. Spy Program is Legal and Essential*, New York Times, Dec. 19, 2005; James Gerstenzang, *Bush Vows to Continue Domestic Surveillance*, L.A. Times, Dec. 19, 2005; Terence Hunt, *Bush Says NSA Surveillance Necessary, Legal*, Washington Post, Dec. 19, 2005; George E. Condon, *Bush Says Spying Is Needed To Guard US*, San Diego Union Tribune, Dec. 20, 2005; Jeff Zeleny, *No 'Unchecked Power' In Domestic Spy Furor*, Chicago Tribune, Dec. 20, 2005; Michael Kranish, *Bush Calls Leak of Spy Program Shameful*, Boston Globe, Dec. 20, 2005; Craig Gordon, *For Bush, 9/11 Justifies Eavesdropping*, Newsday, Dec. 20, 2005; Terence Hunt, *Bush Defends Domestic Spying Program as Effective Tool in War on Terror*, Detroit Free Press, Dec. 19, 2005.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 32 CFR § 286.4(d)(1), (3); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

10

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Ann Beeson
Associate Legal Director
American Civil Liberties Union

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

11